## SAMUEL M. HARTMAN v. BLANDING'S INC. AND OTHERS.

181 N. W. (2d) 466.

November 20, 1970—No. 42253.

*Sigwel Wood,* for appellant.

*Benshoof, Hummel & Sinclair* and *James D. Sinclair,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Rogosheske, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

Defendant Blanding's Inc. appeals from a judgment and an amended judgment determining that plaintiff, Samuel M. Hartman, has acquired a prescriptive easement for a driveway and granting a permanent injunction against interference with his use of the driveway.

Plaintiff brought the action for an injunction against defendants[1] to prevent them from obstructing a driveway from U. S. Highway No. 10 to the front entrance of plaintiff's build-

---

[1] Defendants City of Detroit Lakes; Minneapolis, St. Paul, and Sault Ste. Marie Railroad Co.; and Waldo Johnson and Curtis Klomstad, doing business as Lakes Ford, have not joined in this appeal.

ing. The driveway involved is claimed by right of prescription. A temporary injunction was granted and the case thereafter was tried on the merits.

The tracts of land involved in this lawsuit are all located in Auditor's Lot 54 in Detroit Lakes, Becker County, Minnesota. All of Lot 54 was purchased by the Blanding-Nordby Company, subsequently Blanding's Inc., in 1898. On April 2, 1906, the west one-half of Auditor's Lot 54 was sold to the Detroit Grocery Company, plaintiff's predecessor in title. On the same date the Blanding-Nordby Company conveyed a triangular tract located in the southwest corner of the east one-half of Lot 54 to the city of Detroit Lakes.

A building located on the northwest corner of Lot 54 was used by the Detroit Grocery Company for their offices and warehouse. The grocery company operated a wholesale grocery business out of this building for nearly 50 years until 1955. In 1950 Detroit Grocery Company leased the south portion of this tract to the Soo Line Railroad Company, reserving the right to cross said property. The Detroit Grocery Company sold the property in 1955 to Don Sealander, Howard Myhre, and plaintiff. A portion of this land was sold to the Soo Line Railroad Company in 1956. The interests of Don Sealander and Howard Myhre were subsequently conveyed to plaintiff, and he is the present owner of the remainder of property.

Plaintiff testified that in the early 1930's he and his brothers hauled produce to the Detroit Grocery Company building twice a week and that the only access used to get to the building was the driveway in question. He further testified that he observed other persons going to and from the warehouse and saw cars and trucks parked in front of the warehouse. The trucks were loading or unloading groceries. After he and his partners purchased the property in 1955, the warehouse was rented out to various persons and firms. Plaintiff testified that the renters continued to use the driveway in question and that no objection to the continued use of the driveway was made by anyone until defendant

Blanding's attempted to block the same and shut off plaintiff's continued use in 1968.

Six former employees or customers of Detroit Grocery Company and one former competitor testified as to the use of the driveway. These witnesses testified that from 1929 to 1954 the driveway was used by truck drivers hauling produce for Detroit Grocery; by salesmen for Detroit Grocery as well as salesmen for various food manufacturers; by other employees of the company; and by customers doing business at its warehouse.

James Hammer, a former bookkeeper and city desk man for Detroit Grocery Company, testifying with reference to the extent of the use of the driveway, said:

"A. Well, it wasn't unusual in a day at times to have as high as 15 to 20 salesmen calling there plus numerous customers who came in to pick up orders and freight companies hauling freight in, others hauling freight out. Many days I know of perhaps 50 vehicles were used.

"Q. Fifty vehicles went in?

"A. In and out in a day, perhaps."

The same witnesses testified that not only was there a visible driveway, but it was maintained by the grocery company by spreading cinders and grading when necessary. They also testified that the driveway was never blocked except for an occasional tank car on a track of the Soo Line Railroad and that it was possible to drive around the car. They had never heard anyone object to the use of the driveway. It was established that a portion of the driveway was also used by defendant in going to and from coal sheds located on its property. None of the testimony relating to the use of the driveway by the Detroit Grocery Company was contradicted by any of the witnesses appearing in behalf of defendant.

The legal issues presented on this appeal are as follows: (1) Where the plaintiff claiming an easement by prescription has shown an open, visible, continuous, and unmolested use for the

required period, inconsistent with the owner's rights and under circumstances from which may be inferred his knowledge and acquiescence, will such use be presumed to be under a claim of right and adverse so as to place upon the defendant the burden of rebutting this presumption by showing that the use was permissive? (2) Does the evidence adduced at the trial sustain the verdict of the jury and the findings of fact and conclusions of law and judgment of the court? (3) Where an appeal to the supreme court is from the judgment and where no motions for a new trial or amended findings are made, may this court review matters involving evidentiary rulings and objections to instructions?

■ The rule was laid down in Merrick v. Schleuder, 179 Minn. 228, 230, 228 N. W. 755, 756, that—

"* * * 'where the claimant [of an easement by prescription] has shown an open, visible, continuous and unmolested use' for the required period inconsistent with the owner's rights and under circumstances from which may be inferred his knowledge and acquiescence, the use will be presumed to be under claim of right and adverse so as to place upon the owner [of the servient estate] the burden of rebutting this presumption by showing that the use was permissive."

The court held further (179 Minn. 229, 228 N. W. 755):

"In order to create an easement by prescription the adverse user need not be exclusive in the sense that the easement must have been used by one person only. All that is required is that the right shall not depend for its enjoyment upon a similar right in others. It must be exclusive as against the community at large."

In the early case of Swan v. Munch, 65 Minn. 500, 502, 67 N. W. 1022, 1023, this court said:

"A wrongful entry upon land, with continued possession, without any pretense of paper title, but under a claim of right

inconsistent with the title of the true owner, and the exercise of acts of possession hostile to his rights in the land, may ripen into title by prescription. Village of Glencoe v. Wadsworth, 48 Minn. 402, 51 N. W. 377. Such use or adverse possession must be enjoyed by actual entry, and under such circumstances as will indicate that it is claimed as a matter of right. The true owner's rights must be invaded by such hostile acts as would constitute grounds for action against the adverse claimant or intruder, and under such circumstances as to make the possession appear to be for the benefit of the claimant."

Defendant relies primarily upon Romans v. Nadler, 217 Minn. 174, 178, 14 N. W. (2d) 482, 485, in which this court stated:

"Occasional and sporadic trespasses for temporary purposes, because they do not indicate permanent occupation and appropriation of land, do not satisfy the requirements of hostility and continuity, and do not constitute adverse possession, even where they continue throughout the statutory period. * * *

 \* \* \* \* \*

"\* \* \* [T]he same continuity of user is not required in cases of prescriptive easements as in those of title by adverse possession. In cases of easements, the requirement of continuity depends upon the nature and character of the right claimed."

We fail to see how defendant can rely upon Romans v. Nadler, *supra,* in view of the latter statement with regard to the continuity of user requirement in cases of prescriptive easements.

In Moore v. Henricksen, 282 Minn. 509, 165 N. W. (2d) 209, this court held that the evidence supported the trial court's implied finding that the plaintiff had a prescriptive easement to use defendant's driveway on adjoining land after such use had been continuous, open, actual, adverse, and exclusive. This court in Dozier v. Krmpotich, 227 Minn. 503, 506, 35 N. W. (2d) 696, 698, said:

"While statutes of limitation by their terms do not apply to actions involving incorporeal hereditaments such as easements,

but to those for the recovery of land, and while it is said that the right of easement is acquired by prescription and title to land by adverse possession, an adverse user of an easement for the statutory period within which an action for the recovery of land must be brought[2] is, in analogy to title to land thus acquired by adverse possession, evidence of prescriptive right thereto. Prescriptive right rests upon the fiction of a lost grant. Subject only to such differences as are necessarily inherent in the application of the rules to such cases, the same rules of adverse user apply in cases of easements by prescription as in those of title by adverse possession. Romans v. Nadler, 217 Minn. 174, 14 N. W. (2d) 482. Where the claimant of an easement by prescription has shown open, visible, continuous, and unmolested use for the statutory period, inconsistent with the rights of the owner of the servient estate and under circumstances from which his knowledge and acquiescence may be inferred, the use will be presumed to be under claim of right and adverse, so as to place on the owner of the servient estate the burden of rebutting the presumption by evidence that the use was permissive. Schmidt v. Koecher, 196 Minn. 178, 265 N. W. 347; Merrick v. Schleuder, 179 Minn. 228, 228 N. W. 755; Stapf v. Wobbrock, 171 Minn. 358, 214 N. W. 49; Annotation, 170 A. L. R. 778, et seq. The very foundation of the establishment of a right to an easement by prescription is the acquiescence by the owner of the servient tenement in the acts relied upon to establish such prescriptive right. 17 Am. Jur., Easements, § 66. It is also the rule that, where the user is permissive on the part of the owner, there can be no prescriptive right, and that, if the user was permissive in its inception, it must become adverse to the knowledge of the owner of the servient estate before any prescriptive rights can arise. Aldrich v. Dunn, 217 Minn. 255, 14 N. W. (2d) 489. It must be apparent, therefore, that 'acquiescence' and 'permission' as

---

[2] Under Minn. St. 541.02, an action for the recovery of real estate or possession thereof must be commenced within 15 years after plaintiff's disseizin.

used in this connection are not synonymous. 'Acquiescence,' regardless of what it might mean otherwise, means, when used in this connection, passive conduct on the part of the owner of the servient estate consisting of failure on his part to assert his paramount rights against the invasion thereof by the adverse user. 'Permission' means more than mere acquiescence; it denotes the grant of a permission in fact or a license. Naporra v. Weckwerth, 178 Minn. 203, 226 N. W. 569, 65 A. L. R. 124. See, Dartnell v. Bidwell, 115 Me. 227, 98 A. 743, 5 A. L. R. 1320; Davis v. Wilkinson, 140 Va. 672, 125 S. E. 700. The distinction between 'acquiescence' and 'permission' was pointed out in the Naporra case * * *."

See, also, Schuette v. Sutter, 128 Minn. 150, 150 N. W. 622.

It is clear from the foregoing decisions that license or permissive use on the part of the landowner must be distinguished from mere acquiescence, this court indicating that the one is evidence that claimant did not have the right in the absence of a permission, while the other is evidence that he did. In the case of permissive use, the user is under the owner of the servient estate; in a case of acquiescence, it is against him.

In answering the question whether plaintiff's user was adverse, we start with the presumption under the rule stated in Dozier that it was adverse. The presumption, unless rebutted, prevails and controls decision as a rule of law. The question then is whether under the facts the presumption has been rebutted. We conclude that the proof in the instant case does not rebut the presumption for the reason that the evidence as a whole shows only acquiescence, not permission. See, Zollinger v. Frank, 110 Utah 514, 175 P. (2d) 714, 170 A. L. R. 770; Donea v. Massachusetts Mutual L. Ins. Co. 220 Minn. 204, 212, 19 N. W. (2d) 377, 382. The facts permit an inference that use of the driveway was from its very inception under a claim of right. Furthermore, it would appear that plaintiff's user was one of right under an easement that had been acquired by prescription based upon an adverse user for the statutory period.

 It appears from the record that defendant did not make a motion for a new trial or amended findings. It will be noted that this appeal is from the judgment entered pursuant to the findings. This court has repeatedly held that where an appeal is from a judgment and where there has been no motion for a new trial, the scope of review is limited to whether the evidence sustains the findings of fact and whether the findings of fact sustain the conclusions of law and the judgment; and that in matters involving trial procedure and evidentiary rulings, objections to instructions are not, under the circumstances, subject to review. Heise v. The J. R. Clark Co. 245 Minn. 179, 71 N. W. (2d) 818; Olson v. Mullen, 244 Minn. 31, 68 N. W. (2d) 640; Maust v. Maust, 222 Minn. 135, 23 N. W. (2d) 537; Potvin v. Potvin, 177 Minn. 53, 224 N. W. 461.

While we have reviewed and considered the many questions raised by defendant on appeal, we have limited our scope of review to whether the evidence sustains the findings of fact and whether the findings of fact sustain the conclusions of law and the judgment entered herein pursuant to the rule established by the cases cited above. It would serve no good purpose, based upon the record, to discuss questions raised regarding the trial court's instructions and questions involving the admissibility of evidence.

We reach the conclusion that the necessary elements to establish an easement by prescription are present.

Affirmed.