**Harry McCUEN, et al., Appellants,**

v.

**Joseph McCARVEL, et al., Respondents.**

**No. 47553.**

Supreme Court of Minnesota.

Jan. 20, 1978.

Brecht, Hedeen & Hughes and Laurence B. Hughes, Worthington, for appellants.

LaVelle, Darling & LaVelle and Robert A. Darling, Worthington, for respondents.

## PER CURIAM.

Plaintiffs, owners of the southeast quarter of Section 14, Lorain Township, Nobles County, brought this action against defendants, owners of the northeast quarter of the section, claiming that defendants have wrongfully obstructed drainage of surface waters from plaintiffs' farm and seeking an order requiring defendants to reestablish such drainage. Plaintiffs appeal from a judgment dismissing their action with prejudice. We affirm.

Prior to 1971 a town road which had been established 100 years earlier ran along the east line of the section. Surface waters flowed off plaintiffs' land to the north and were carried off in the west ditch of the road along defendants' land. In 1967 and 1968, after acquiring 17 acres along the north boundary of plaintiffs' farm and a small strip along the south boundary of defendants' tract, the state constructed a segment of Interstate Highway No. 90 (I–90), placing culverts under the freeway so that surface waters from plaintiffs' land could drain into the north ditch of I–90, then east to the town road, and north in the west ditch of the town road.

Construction of I–90 severed and "dead-ended" the town road. Consequently, in early 1971, plaintiff Harry McCuen, who was the town clerk, initiated proceedings pursuant to Minn.St. 164.07 to vacate the road. McCuen himself signed the petition required by the statute and obtained signatures from other landowners, including defendant H. Virgil Richter, who lived on the northeast quarter of Section 14. Defendant Joseph McCarvel, who lived too far from the road to petition for its vacation, signed the petition as a witness. McCuen said nothing to either defendant about drainage when he asked them to sign the petition.

The petition was unopposed. After compliance with the provisions of Minn.St. 164.07, the town board issued an order vacating the road on March 25, 1971. The order did not require preservation of the ditches along the road although § 164.07, subd. 3a, provides that if the board finds that the ditches of a road which is the subject of vacation proceedings are essential for surface drainage of adjacent lands or highways, it may order the road vacated but provide that the town retain access for the purpose of maintaining the ditches.

Following issuance of the order, defendants and the owners of the northwest quarter of Section 13 filled the ditches and leveled the road between their farms. In this action plaintiffs contend that they have acquired an easement by prescription over the area on defendants' farm formerly occupied by the west ditch of the road and that defendants have wrongfully and unlawfully obstructed the natural flow of surface water from plaintiffs' farm by filling the ditch. We are required to conclude, as did the trial court, that plaintiffs did not acquire an easement and failed to prove the claimed obstruction of the normal and natural flow of surface water from their land.

To establish an easement by prescription a party must prove user for the prescriptive period of 15 years and must prove that the user was hostile, actual, open, continuous, and exclusive. *Burns v. Plachecki*, 301 Minn. 445, 223 N.W.2d 133 (1974); *Romans v. Nadler*, 217 Minn. 174, 14 N.W.2d 482 (1944). Plaintiffs presented no evidence that the ditch was a natural de-

pression before the town road was constructed, so their predecessors in title could not have acquired an easement by prescription prior to construction of the town road. Under the statutes providing for establishment of town roads, the town itself had acquired an easement for road purposes. See, *Buck v. City of Winona*, 271 Minn. 145, 135 N.W.2d 190 (1965); *Sanborn v. Van Duyne*, 90 Minn. 215, 96 N.W. 41 (1903).

 Plaintiffs presented no evidence to show that their user of the ditch for drainage was hostile to the town's rights, but even if it were, they could not acquire an interest adverse to the public's rights prior to vacation of the town road. See, *In re Application of Rein to Register Title*, 275 Minn. 79, 145 N.W.2d 537 (1966); *Neill v. Hake*, 254 Minn. 110, 93 N.W.2d 821 (1958). Cf. Minn.St. 541.01, which provides that no occupant of a public way or other ground dedicated or appropriated to public use can acquire a title thereto by adverse possession.

Similarly, plaintiffs presented no evidence that their user of the ditch while the town's easement was in existence was hostile to defendants' interest in their property. Rather, the user was a consequence solely of the easement and was in no way inconsistent with defendants' rights as owners of the servient estate. Upon vacation of the road, the town's easement was extinguished and the land occupied by the road reverted to the fee owners. *Buck v. City of Winona, supra.* Termination of the town's easement therefore terminated plaintiffs' right to use the ditch for drainage of surface waters.

Plaintiffs contend, nevertheless, that defendants' acts in filling it and leveling the road constituted an unreasonable interference with the flow of surface water from plaintiffs' land. The trial court found, however, that defendants' acts do not obstruct the normal and natural flow of water from plaintiffs' land; that plaintiffs' property does not suffer water damage except during times of inordinate rains; and that at such times the drainage capacity of

the ditch would be inadequate if it were still in existence. The finding must be affirmed because it is not clearly erroneous. Rule 52.01, Rules of Civil Procedure. While there was some conflict in the evidence about the frequency with which runoff from melting snow and rain in the early spring might have drained from plaintiffs' land into the ditch in past years, plaintiffs' own proof established that they have had no water problems on their property since the ditch was filled and have suffered crop losses only in 1952, when there was flooding, and in 1969, when an 8-inch rain described as "the rain of the century" caused flash floods in the area. They suffered this damage because of unusual weather conditions and despite the existence of the ditch.

On this evidence the trial court properly concluded that defendants' actions did not obstruct the normal and natural drainage of surface waters from plaintiffs' farm and instead merely restored their own land to its original condition so it could again be devoted to farming.

Affirmed.