Charles I. NORDIN, et al., Respondents,

v.

Donald W. KUNO, et al., Appellants.

No. 49516.

Supreme Court of Minnesota.

Jan. 18, 1980.

924

Doherty, Rumble & Butler and David G. Martin, St. Paul, for appellants.

Lawson, Raleigh & Marshall and Raymond O. Marshall, Lake Elmo, for respondents.

Heard before PETERSON, YETKA and WAHL, JJ., and considered and decided by the court en banc.

YETKA, Justice.

By a complaint dated October 29, 1976, the Nordins brought suit against the Kunos claiming adverse possession of a gravel driveway on the Kuno property or, in the alternative, a prescriptive easement to use the driveway. On April 18, 1978, the Washington County District Court ruled that the Nordins own a permanent prescriptive easement in the gravel driveway for purposes of ingress and egress to their store. The court further enjoined the defendants and their successors from erecting any barriers to

prevent that usage by plaintiffs. In response to defendants' motion for amended findings or a new trial, the court added the element of hostility to its previous findings, but otherwise denied the motion. The defendants filed a timely appeal from that denial.

We affirm.

The issues raised on this appeal are:

1. Do the facts of this case establish the *exclusivity* necessary for a prescriptive easement?

2. Do the facts of this case establish the *hostility* necessary for a prescriptive easement?

3. Was the burden on defendants' land materially increased in 1962, 1967 or 1971 so as to start the running of the 15-year statute of limitations on one of those dates?

The property in dispute is located in Washington County along County State Aid Highway No. 15, which runs north and south. The plaintiffs own, operate, and live above a general country store which is located on the east side of County 15 and faces west towards the road. To the north of the store, also on the east side of County 15, is a house owned and leased out by the defendants who reside in California but visit Minnesota approximately once a year. Between the house and the store, there lies grass, trees, and the disputed driveway.[1]

To understand the transactions in this case, it is necessary to understand the relationships between the parties. Andrew and Mary Kuno had four daughters and a son, John August. Andrew and Mary also raised George Kuno, but whether George was their grandson or adopted son is unknown. George was the father of Donald Kuno, the defendant. John August was the father of George H. Kuno, who was the father of Raymond Kuno, the plaintiffs' predecessor in interest. Thus, the closest

possible relationship between the defendant Donald Kuno and plaintiffs' predecessor in interest, Raymond Kuno, is that of first cousins once removed, called second cousins by the parties.

Andrew Kuno deeded both the house tract and the store tract to George Kuno in 1898. George split the tracts along the section line, conveying the house tract to Scandia Creamery in 1901 and the store tract in 1902 to a different party. The store tract was conveyed back to George in 1909, and the store building was apparently constructed in the interim between 1902 and 1909. George obtained the deed for the house tract again in 1921, but the Scandia Creamery reserved an easement for ingress and egress to the creamery building on the house tract for 49 years. The creamery ceased doing business at that location between 1920 and 1922, however.

George operated the store using the disputed driveway for receiving deliveries and access to the living quarters. In 1925 George built the house now owned by defendants. George added the south lean-to on the store in 1939 for garage and storage space. In 1940 the north lean-to was built, complete with the loading dock which is raised 3 feet off the ground.

George sold the store to Raymond and Myrna Kuno in 1946. According to the testimony of defendants, George sold the store to Raymond and Myrna for $1,000 less than another offer because they were family. The defendants also stated that George deeded 12 extra feet north of the section line so there would be no question where the boundary was in the future. Raymond and Myrna testified, however, that they thought the driveway went with the store property. They never asked permission to use the driveway nor did anyone tell them not to use the driveway.

In fact, Raymond and Myrna used the driveway for store deliveries and access to

1. From the survey, Pl. Ex. 11, it appears that the driveway is 20–30 feet wide and encroaches on defendant's land approximately 25 feet. Although there was no testimony in the record as to the exact distance between the house and the store, the plaintiffs' counsel, at oral argument, indicated it was approximately 100 feet.

the living quarters from 1946 to 1971. Some of the deliveries began to be made by semitrailers in 1967. Washington County also used the driveway and did some maintenance on it. The renters of the house used the driveway occasionally but did no maintenance on it.[2]

In 1971 Raymond and Myrna Kuno sold the store to the Nordins. No survey was made at the time, but the Nordins understood that the driveway went with the store. The Nordins have plowed and maintained the driveway since 1971. The Nordins constructed a fence along the south side of their property to protect their yard and a small fence around their garbage cans but otherwise made few changes on the outside of the store. The gross sales for the store have increased, and the store now sells 3.2 beer and Stewart sandwiches. The Nordins have also begun to use a garbage service.

Donald and Vera Kuno acquired the house tract by devise in 1956. Vera Kuno testified that the driveway has widened 15 to 18 feet since that time, and Donald testified it has increased 4 to 5 feet just since 1971. The defendants claim that much of this encroachment was caused by the installation of a large propane tank on the north side of the store on September 11, 1962. Two former renters of the house testified that the driveway looks wider, but could not articulate exactly how much. Myrna Kuno said the driveway may be 2 or 3 feet wider to the north than it was in 1946. Raymond Kuno stated that the driveway location hadn't changed much, and Charles Nordin said the driveway today is the same as in 1971.

Mr. Nordin further testified that it would be difficult to construct access from the south because of the septic system.

■ 1. To establish an easement by prescription, a party must prove use for the prescriptive period of 15 years and that the use was hostile, actual, open, continuous and exclusive. *McCuen v. McCarvel*, 263 N.W.2d 64, 65 (Minn.1978). The defendant argues that because the driveway was used by Washington County ·and the house tenants, and it was subject to a recorded but unused easement in the Scandia Creamery until 1970, the plaintiff did not meet the exclusivity requirement.

■ Minnesota law is clear, however, that exclusivity for a prescriptive easement is not as strictly construed as for adverse possession. *Merrick v. Schleuder*, 179 Minn. 228, 232, 228 N.W. 755, 756 (1930). The use need not be exclusive in the sense that it must be used by one person only. *Id.* Rather, the right must not depend upon a similar right in others; it must be exclusive against the community at large. *Id.* In *Merrick*, the plaintiffs' use of a 22 square foot area in back of their commercial building for ingress and egress to an alley was held exclusive despite the fact that the space was once a common way. The building was built to use the space, and the plaintiffs had done so for many years. In this case, similarly, the north lean-to was built to accommodate access from the north, and plaintiffs openly and continually used the driveway for deliveries. This use was certainly exclusive against the community at large.

■ 2. The general rule is that where the claimant of an easement by prescription shows open, visible, continuous, and unmolested use for the statutory period, inconsistent with the rights of the owner and under circumstances from which the owner's acquiescence may be inferred, the use is presumed to be adverse or hostile. *Hartman v. Blanding's, Inc.*, 288 Minn. 415, 181 N.W.2d 466 (1970); *Dozier v. Krmpotich*, 227 Minn. 503, 35 N.W.2d 696 (1949). The plaintiffs here have shown continuous and

---

2. There is a driveway to the house on the north side of it which was built in 1954 and has been the primary access since that date.

unmolested use, and they claim the presumption of hostility applies.

The defendants claim that the presumption should instead be one of permission due to the family relationship between the Kunos. This court has inferred permission where a close family relationship exists. *Burns v. Plachecki*, 301 Minn. 445, 223 N.W.2d 133 (1974) (parent and child); *Lustmann v. Lustmann*, 204 Minn. 228, 283 N.W. 387 (1939) (close brothers); *Collins v. Colleran*, 86 Minn. 199, 90 N.W. 364 (1902) (parent and child). However, the court has refused to infer permission between three unfriendly sisters, *Beitz v. Buendiger*, 144 Minn. 52, 174 N.W. 440 (1919), and friendly neighbors, *Alstad v. Boyer*, 228 Minn. 307, 37 N.W.2d 372 (1949).

█ In this case, the closest possible relationship between Donald and Raymond Kuno is that of first cousins once removed. Even though George Kuno may have reduced the price of the store because Raymond was a Kuno, there is no showing that there is a particularly close relationship between Donald and Raymond. The evidence showed that the two families were generally on friendly terms, but saw each other only at large family get-togethers and once a year when Donald and Vera Kuno came to check on the house. The relationship here is insufficient to infer that Raymond and Myrna had permission to use the driveway.

Having presumed that the use was hostile, the next issue is whether the defendants succeeded in rebutting the presumption. It is clear from the record that neither the Raymond Kunos nor the Nordins asked for or received express permission to use the driveway. It can be inferred from the record that all of the parties who testified assumed that the driveway belonged to the store tract and that nobody knew the true boundary until surveys were made in 1976. Under these facts, the presumption of hostile use has not been rebutted.

█ 3. If a party, after increasing the burden placed on another's land by some change in his activities, claims he has a prescriptive easement, the proper date from which to measure the statute of limitations is the date when the burden increased. *Schmidt v. Village of Mapleview*, 293 Minn. 106, 108, 196 N.W.2d 626 (1972). The defendant argues that the burden on the land increased in 1962 when the propane tank was installed, in 1967 when semitrailers began deliveries, and in 1971 when the Nordins began a garbage service, built a fence to the south, and started selling Stewart sandwiches and 3.2 beer. The issue is whether these changes are substantial enough to cause the statute of limitations to begin running anew. The trial court held that they were not and we agree.

The deliveries by semitrailers and the garbage service are merely weekly occurrences. The 3.2 beer and Stewart sandwiches are not significantly different from the milk, soft drinks, and grocery items the store has always sold. It is unlikely that the propane tank widened the driveway because it was originally installed on the grass next to the store and has now been removed. Even if the driveway has widened somewhat, it has been used to make deliveries to the store and provide access to the residence at least since the 1930's. Finally, it is noteworthy that the trial court granted an easement for ingress and egress; it is not an easement for parking or picnicking, and the defendants who are still owners of the fee can restrict the public from such activities.

The trial court is affirmed.

OTIS, J., took no part in the consideration or decision of this case.