Kenneth **JOHNSRUD**, Respondent,

v.

**TRI–STATE SALES, INC.,** Defendants and Third Party Plaintiffs,

**BORCHERT CONTRACTORS, INC.,** Defendants and Third Party Plaintiffs, Appellant,

v.

**ZIMMER BROS. TRENCHER MFG., DIVISION OF ZIMMER BROS. FARM DRAINAGE LTD.,** et al., Third Party Defendants.

No. C5–84–357.

Court of Appeals of Minnesota.

Aug. 21, 1984.

Philip R. Reitan, Lundquist, Reitan & Lundquist, Mankato, for respondent.

Malcolm D. MacGregor, Dennis E. Dalen, Smith & Persian, Minneapolis, for appellant.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Kenneth Johnsrud brought this action for breach of warranties against Tri-State Sales, Inc. and Borchert Contractors, Inc. After a jury trial, judgment was entered against the defendants jointly and severally. Default judgment was entered against a certain third party defendant which is not involved in this appeal. Initially both Tri-State Sales, Inc. and Borchert Contractors, Inc. appealed, but Tri-State withdrew, leaving just Borchert before this court.

We affirm.

## FACTS

This claim arose from Johnsrud's purchase of a used construction trencher from Tri-State. It is settled for purposes of appeal that the trencher was not fit for the purpose for which it was intended, and that the seller was aware of that purpose.

Borchert Contractors, Inc. was incorporated in the 1960's to install underground drainage systems and sell construction equipment. In the 1970's Tri-State Sales, Inc. was incorporated for the purpose of taking over Borchert's sales functions. Borchert continued in the construction business, and occasionally still sold equipment.

Tri-State and Borchert were incorporated by the same people. Roger Borchert was president of Tri-State, vice-president of Borchert, and is employed by Borchert. Both corporations maintained offices in the same building but maintained separate phones and staffs, separate books, and filed separate corporate tax returns. They were covered by the same insurance policy. Tri-State was managed by Daryl Thompson, its secretary and general manager, who reported periodically to Roger Borchert. At the time of Johnsrud's purchase of the trencher, Tri-State had assets consisting of inventory and equipment, but has since ceased business. Its assets were used to satisfy its tax obligations. At the time of the lawsuit Tri-State was judgment proof; Borchert was solvent.

When Johnsrud bought the trencher which was the subject of this litigation, he dealt with Daryl Thompson, who he thought worked for Borchert. He wanted to buy the machine from Borchert because he had had prior dealings with Roger Borchert, trusted him, and had received good service from him. The company named on the purchase order was Tri-State, but Johnsrud's check in payment for the trencher was payable to and cashed by Borchert. When Johnsrud had problems with the machine, he called Borchert's number and spoke to Thompson. Borchert paid for the warranty work performed on the machine, picked up Johnsrud's trade-in machine, paid for transporting the new machine from Washington to Minnesota, and paid the Washington dealer for it.

Borchert and Tri-State interposed a joint answer in response to Johnsrud's complaint. They were represented by the same attorney throughout the proceedings, who never distinguished between his two clients, never admitted or acted upon the

possibility that his two clients had conflicting interests, and never indicated that Tri-State was defaulting or was no longer in existence. As late as the time of trial, the attorney purported to represent Tri-State as well as Borchert. During jury selection, defendants Tri-State and Borchert were allowed only two peremptory challenges, rather than the four they would have been allowed had they been defending as two adverse separate entities. It was not until the attorney's closing argument that he argued to the jury that liability attached only to Tri-State, not to his client, Borchert.[1]

The case was submitted to the jury on special interrogatories. In the interrogatories, as well as in the jury instructions, the court referred to Tri-State as the seller. The only interrogatory referring to Borchert was interrogatory number 6, which asked whether Tri-State was an " 'alter ego' or agent" of Borchert. Before the case was submitted to the jury, Borchert made a "motion for summary judgment" which was treated as a motion for directed verdict. After the return of the verdict, no motion for judgment n.o.v. or for a new trial was made. The jury answered interrogatory number 6 in the affirmative.

## ISSUES

1. Was Borchert entitled to appeal even though it failed to file a motion for judgment notwithstanding the verdict or for a new trial under Rules 50 and 59, Minn.R. Civ.P.?

2. Was the evidence sufficient to sustain the finding that Borchert Contractors, Inc. was jointly and severally liable with Tri-State Sales, Inc.?

## ANALYSIS

### I.

■ Johnsrud alleges that Borchert's appeal should be dismissed for its failure to file a motion for judgment n.o.v. or for a

new trial. While evidentiary rulings may not be reviewed unless such a motion has been made, the sufficiency of the evidence may be reviewed even where no motion for judgment n.o.v. or for a new trial has been made. The scope of review where no motion for new trial or for judgment n.o.v. was made is limited to whether evidence sustains the findings of fact and whether the findings of fact sustain the conclusions of law under "any applicable rule of law." *Hartman v. Blanding's, Inc.,* 288 Minn. 415, 423, 181 N.W.2d 466, 470 (1970); *Kilty v. Mutual of Omaha Ins. Co.,* 287 Minn. 403, 178 N.W.2d 734, 736 (1970).

### II.

Borchert argues that, in determining the sufficiency of the evidence to support the judgment against it, this court is limited to determining the sufficiency of the evidence to sustain a finding that Tri-State was its "agent or alter ego." Johnsrud, on the other hand, contends that the judgment against Borchert should be affirmed if it could be found liable on "any applicable rule of law"—"applicable" meaning any theory reasonably raised by the evidence. (Johnsrud also contends that, in any event, the evidence was sufficient to support a finding of agency or alter ego.)

■ In a recent decision, the Minnesota Supreme Court reviewed the standard to be applied on the appeal of a judgment entered on special verdict questions. *Hauenstein v. Loctite Corporation,* 347 N.W.2d 272 (Minn.1984). The court stated:

It is well settled that we will set aside an answer to a special verdict question only when it is perverse and palpably contrary to the evidence ... A jury verdict will be overturned only if no reasonable mind could find as did the jury ... If the answers to special verdict questions can be reconciled on *any* theory, the verdict

---

1. The attorneys representing Tri-State Sales, Inc. and Borchert Contractors, Inc. on appeal are not the attorneys who represented them at trial.

will not be disturbed (citations omitted) (emphasis in original).

*Id.* at 275. While the court was specifically speaking of answers to special verdict questions which were alleged to be inconsistent with each other, the rule applies as well to a case such as this where the findings in themselves are not alleged to be inconsistent but there may be grounds to find liability other than the one specifically given the jury. The jury's finding of liability on Borchert's part was not "perverse" or "palpably contrary to the weight of the evidence." Any reasonable juror, given the testimony and exhibits from the trial, could have reached the same result.

In any event, the evidence when viewed in the light most favorable to the prevailing party could support the jury's finding that Tri-State was an "agent or alter ego" of Borchert. The jury sat through a lengthy trial in which Borchert and Tri-State were both represented by a single attorney, who made no effort to prove separate defenses or pursue separate trial strategies for his clients. The jury heard Roger Borchert testify to his relations with both corporations, and heard Kenneth Johnsrud say that he didn't care which corporation he bought his new trencher from as long as he bought it from, and could rely upon, Roger Borchert's service and expertise. They also heard that Borchert Contractors had taken payment for the new trencher sold by Tri-State, had provided replacement parts and had paid for warranty service. From all of this, a jury could have reasonably concluded that Tri-State was acting as Borchert's sales agent when it sold the trencher to Kenneth Johnsrud.

### DECISION

Evidence was sufficient to support a finding that Borchert Contractors, Inc. was liable for breach of warranties in connection with the sale of a used trencher by Tri-State Sales, Inc.

Affirmed.