Dean M. **BLOCK**, et al., Respondents,

v.

Rita H. **SEXTON**, Respondent,

James **Billig**, et al., Appellants,

Thomas **Striker**, et al., Defendants.

No. C5–97–1721.

Court of Appeals of Minnesota.

May 19, 1998.

Robert H. Wenner, Reichert, Wenner, Koch & Provinzino, P.A., St. Cloud, for respondents Block, et al.

Rita H. Sexton, Frederic, MI, pro se.

Michael M. Murphy, Jr., Murphy Law Offices, St. Cloud, for appellants.

James F. Mewborn, Minneapolis, for defendants Striker, et al.

Considered and decided by CRIPPEN, P.J., and LANSING and PETERSON, JJ.

## OPINION

LANSING, Judge.

The district court entered judgment establishing a prescriptive easement on a field road providing access to U.S. Highway 10 in rural Benton County. The owners of the underlying fee appeal the easement, and the easement claimants seek review of the limits on the easement's width and seasonal use. We affirm.

## FACTS

Dean and Lisa Block purchased a 17–acre tract of unimproved land from Rita Sexton in 1992. Located in section 11 of Langola Township, the Sexton parcel was originally part of the 360–acre Posch farm owned by Sexton's father and grandfather. Sexton purchased the tract from her mother in 1965.

From 1941 until at least January 1982, the Posch family, including Sexton, traveled between U.S. Highway 10 and the Sexton parcel by driving along a field road that abutted the north line of adjoining farmland in section 12 in Langola Township. The field road intersects land in section 12 now owned by James and Florence Billig, directly adjoining the highway right of way. The Posch family used the field road several times each month between May and October of each year. Where it crossed the Billigs' land, the roadway was hard-packed dirt, wide enough to accommodate cars, trucks, and farm machinery. Although the Posch family had other access to their 360–acre farm, this field road was Sexton's only access to the land she purchased from her mother in 1965. From the late 1970's through 1981, Sexton unsuccessfully attempted to get a public cartway established along the path. In 1981, Sexton purchased an easement from her brother that provided access to County Highway 40, a road south of the Sexton property.

Sometime between 1945 and 1950, someone installed a gate on the west end of the field road. Sexton and her predecessors continued to use the road by opening the gate. The Billigs contend they did not see people using the road and that passage was sometimes impossible due to weather and soil conditions. In 1980 or 1981, James Billig installed posts with a wire cable and a lock adjacent to the railroad crossing at the point the field road reached Highway 10. Sexton complained to a member of the Langola Township Board and also went to Billig's home to discuss the gate. Billig said he installed the lock to keep trespassers out, but it was not locked and Sexton could continue to use the path. Sexton used the path ten to twelve times after this discussion, although there is no clear evidence she used the road

after she moved from Minnesota in January 1982.

In 1992, Sexton listed her property for sale with a local realtor and gave the realtor a handwritten note that outlined the features of the property—including the direct "cartway" access to Highway 10 via the field road across the Billigs' property. All prospective purchasers, including the Blocks, received a copy of this note. When the Blocks viewed the parcel, the realtor pointed out the field road.

The Blocks learned of possible problems with the field road before they closed on the property on December 1, 1992, and attempted to back out of the purchase. Although the realtor searched for evidence of the cartway, all parties now agree the township had not established a cartway under Minn.Stat. Ch. 164. Neither the purchase agreement nor the deed referred to a cartway or field road from Highway 10 or the easement from County Highway 40.

The Blocks sued Sexton and her realtor for misrepresentation and consumer fraud and later amended the complaint to add a claim for prescriptive easement against the Billigs. The district court dismissed the claims against Sexton and the realtor, but entered judgment establishing the prescriptive easement. The Billigs appeal from judgment and the denial of their posttrial motions.

## ISSUES

I. Did the district court err in finding a prescriptive easement?

II. Did the district court err in limiting the scope of the prescriptive easement to its original width and seasonal use?

## ANALYSIS

### I

To establish an easement by prescription, a claimant must prove he or she used the easement for the prescriptive period of 15 years and that such use was hostile, actual, open, continuous, and exclusive. *Burns v. Plachecki,* 301 Minn. 445, 448, 223 N.W.2d 133, 136 (1974). In rural or undeveloped areas, occasional and sporadic use may give rise to a prescriptive easement. *See*

*Skala v. Lindbeck,* 171 Minn. 410, 413, 214 N.W. 271, 272 (1927) (actual and visible occupation is more imperative with developed land). Use of an easement is presumed to be adverse or hostile when the easement claimant shows open, visible, continuous, and unmolested use for the statutory period that is inconsistent with the owner's rights, under circumstances from which the owner's acquiescence may be inferred. *Nordin v. Kuno,* 287 N.W.2d 923, 926 (Minn.1980); *Hartman v. Blanding's, Inc.,* 288 Minn. 415, 419, 181 N.W.2d 466, 468 (1970). Unless the defendant successfully rebuts this presumption, the claimant prevails. *Hartman,* 288 Minn. at 419, 181 N.W.2d at 468. Without the aid of this presumption, the adverse character of the original user is an issue of fact, and the easement claimant must present "clear and unequivocal proof of inception of hostility." *Burns,* 301 Minn. at 449, 223 N.W.2d at 136. Once a prescriptive easement comes into existence, it passes to subsequent owners of the property. *Swedish–American Nat'l Bank of Minneapolis v. Connecticut Mut. Life Ins. Co.,* 83 Minn. 377, 382, 86 N.W. 420, 422 (1901).

After a two-day trial, the district court found that Sexton and her predecessors in interest used the farm road "openly, visibly, continuously, and without molestation or objection" from sometime in 1940 until January 1982. Although Sexton's use was sporadic, the district court found that use suitable to the undeveloped, unimproved character of the property. Based on these findings, the district court concluded that the Blocks were entitled to a prescriptive easement and provided a legal description of that easement.

James and Florence Billig claim the district court erred in concluding the Blocks hold a prescriptive easement because (1) its existence was not established by clear and convincing evidence; (2) Sexton's use was permissive, rather than hostile, and she abandoned the use; (3) the Sexton parcel and the Billig parcel are not directly adjacent to each other; and (4) Gerald Schlichting, owner of the intervening parcel, was not a party to this action. These arguments are unpersuasive.

■ First, Sexton's testimony provides ample support for the district court's finding that Sexton used the farm road "openly, visibly, continuously, and without molestation or objection" from sometime in 1941 until January 1982. On this evidence, the court properly applied the presumption, described in *Nordin* and *Hartman,* that the use is adverse or hostile. It is unnecessary to meet the clear and convincing standard set forth in *Burns* that applies when the threshold for the presumption has not been met.

Second, the Billigs failed to rebut the presumption by proving Sexton's use was permissive. The evidence the Billigs rely on to show that Sexton's use was permissive was Sexton's asking James Billig for "permission" to use the path in 1981, after Billig had installed the lock. But the evidence demonstrates that Sexton and her family used the field road as their own for nearly 40 years before Billig installed the lock. Because the Billigs acquiesced to this continued seasonal use, the district court correctly concluded that Sexton's family established a prescriptive easement over the path by the summer of 1956. *See Hartman,* 288 Minn. at 421–22, 181 N.W.2d at 469–70 (distinguishing between acquiescence to use of parcel and permission to use it). Sexton's testimony that she approached Billig about the locked gate to assert her continued right to use the easement is consistent with her overall testimony, which the court found credible.

■ The Billigs also imply that Sexton abandoned the easement when she moved out of Minnesota in 1982. This argument is also unpersuasive. "A claim of abandonment can be upheld only where nonuse is accompanied by affirmative and unequivocal acts indicative of an intent to abandon and is inconsistent with the continued existence of the easement." *Richards Asphalt Co. v. Bunge Corp.,* 399 N.W.2d 188, 192 (Minn.App.1987) (citations omitted). Billigs have presented no evidence of "affirmative and unequivocal" acts indicating Sexton's intent to abandon the easement.

■ The Billigs' third argument is that their land is not adjacent to the Blocks; therefore, any easement established by Sexton was an easement in gross, rather than an easement appurtenant, and cannot be transferred. An easement in gross is the right to use another's property that is personal and revocable. *See Callen v. Hause,* 91 Minn. 270, 271, 97 N.W. 973, 974 (1904); *Lidgerding v. Zignego,* 77 Minn. 421, 424, 80 N.W. 360, 361 (1899). Thus, an easement in gross is essentially an irrevocable license. *Lidgerding,* 77 Minn. at 424, 80 N.W. at 361. An easement appurtenant is one that is granted for the benefit of the grantee's land. *Id.* at 425, 80 N.W. at 360.

■ The Billigs base their claim of nonappurtenance on the fact that their land is not directly adjacent to the Blocks' land. Instead, there is an intervening parcel, owned by Gerald Schlichting. But whether an easement is appurtenant or in gross is determined not by contiguity but by whether the easement was intended to benefit the grantee's land. *Lidgerding,* 77 Minn. at 425, 80 N.W. at 361. Although the easement was never recorded, the circumstances surrounding its creation and use suggest it was intended to provide the Posch farm with a seasonal short-cut to town. *Id.* at 425, 80 N.W. at 361. After Sexton purchased part of the Posch farm, the road provided the only access to her land from 1965 until at least January 1982. *See id.* ("If the way leads to the grantee's land, and is useless except for use in connection with it, and after the grant was used solely for access to such land, it is appurtenant to it."); *see also Bruns v. Willems,* 142 Minn. 473, 478, 172 N.W. 772, 774 (1919) ("where it clearly appears that the way was intended to be appurtenant to the land conveyed, it should be so considered even though the way does not reach the grantee's land directly").

Finally, the Billigs dispute the district court's "implied" findings regarding neighbor Gerald Schlichting's ownership of adjacent property. But the district court's determination of Schlichting's ownership is clearly supported in the record.

## II

■ The scope of a prescriptive easement is "measured and defined by the use made of the land giving rise to the ease-

ment." *Romans v. Nadler,* 217 Minn. 174, 181, 14 N.W.2d 482, 486 (1944). An easement does not give title to the land upon which it is imposed, nor does it exclude use by the landowner or the public. *Id.* at 181–82, 14 N.W.2d at 487. However, "it has long been held that the holder of an easement is not limited to the particular method of use in vogue when the easement was acquired, and that other methods of use in the aid of the *general purpose* for which the easement was acquired are permissible." *Washington Wildlife Preservation, Inc. v. State,* 329 N.W.2d 543, 546 (Minn.1983). At the same time, "[i]t is well settled that the extent of an easement should not be enlarged by legal construction beyond the objects originally contemplated or expressly agreed upon by the parties." *Minneapolis Athletic Club v. Cohler,* 287 Minn. 254, 258, 177 N.W.2d 786, 790 (1970).

The Blocks' first argument is that no legal precedent supports the district court's decision to limit their use of the easement to the period between May and October of each year. This assertion is simply not correct. Minnesota courts have long recognized that the extent of an easement depends upon the character and purpose of the use. For instance, in *Swan v. Munch,* five plaintiffs sued to recover damages caused by overflow from the defendant's sluicing dam each spring. 65 Minn. 500, 504, 67 N.W. 1022, 1024 (1896). The Minnesota Supreme Court determined the defendant's uninterrupted use of those lands during the months of April, May, and June for the required 15–year period gave rise to an easement by adverse possession for three months each year. *Id.*

The Blocks' second argument is that the trial court erred in limiting their easement to a width of 20 feet. The Blocks contend that, based on Sexton's long-standing belief that the field road was a cartway, the width should be 33 feet to meet the statutory definition of cartway. Citing *Town of Dell Grove v. Helwig* and *Marchand v. Town of Maple Grove,* they also argue the width of an easement may include the traveled part of the road as well as "adjacent ground reasonably necessary for repair and maintenance."

These cases do not support the Blocks' argument to increase the width of the easement. In *Town of Dell Grove,* the court determined the evidence was "wholly insufficient" to warrant imposing enlarged boundaries upon servient property, "despite the broadest application of the principle * * * that a prescriptive easement need not be limited to the width of the car tracks but may include adjacent ground reasonably necessary for repair and maintenance." 276 Minn. 139, 141, 149 N.W.2d 73, 74 (1967). *Marchand* is distinguishable because the case involved efforts to widen a *public highway* acquired through adverse use. 48 Minn. 271, 273, 51 N.W. 606, 606 (1892). Moreover, *Marchand* stands for the proposition that the width of the road acquired by prescriptive easement is to be "measured and determined by the character and extent of the user," as a question of fact for the jury. *Id.* at 277, 51 N.W. at 607.

Basing the easement on the character and extent of the parties' use, the district court acted well within its discretion by limiting its width to just 20 feet. *See also Minneapolis Athletic Club,* 287 Minn. at 258, 177 N.W.2d at 790 (scope of easement should not be extended beyond the objects originally contemplated). Relying on the same legal principle, the district court did not err in limiting the Blocks' use of the easement to ingress and egress from May to October each year— thereby preventing them from installing phone and power lines to their property. *Cf. Nordin,* 287 N.W.2d at 927 (easement for purpose of ingress and egress to store does not include parking or picnicking).

### DECISION

The district court did not err in determining that Dean and Lisa Block hold a 20–foot prescriptive easement across property owned by James and Florence Billig, or in limiting the scope of the easement to ingress and egress from May to October each year.

**Affirmed.**