*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A16-0760

In re the Matter of the Application of Susan L. C. Mahoney to Register the Title to
Certain Land

**Filed January 17, 2017**
**Reversed and remanded**
**Smith, Tracy M., Judge**

Washington County District Court
File No. 82-CV-13-301

Kevin K. Shoeberg, Kevin K. Shoeberg, P.A., Woodbury, Minnesota (for appellants
Michael Kraemer and Candice Kraemer)

Jared M. Goerlitz, PFB Law, P.A., St. Paul, Minnesota (for respondent Susan L. C.
Mahoney)

Considered and decided by Johnson, Presiding Judge; Reyes, Judge; and Smith,

Tracy M., Judge.

## U N P U B L I S H E D   O P I N I O N

**SMITH, TRACY M.**, Judge

This case involves a dispute between appellants Michael and Candice Kraemer and

respondent Susan L.C. Mahoney over the Kraemers' driveway, which encroaches on

Mahoney's property. Following a bench trial, the district court concluded that the

Kraemers had an easement for the encroaching driveway, subject to a relocation provision

requiring the Kraemers to move their driveway off of Mahoney's property in the event they

substantially reconstruct the driveway. On appeal, the Kraemers argue (1) that they

satisfied all of the elements of a prescriptive easement and (2) that the district court erred in restricting their use of the driveway by including the relocation provision. Also in this action, the Kraemers sought to register their property boundaries, and, on appeal, they argue that the district court erred by failing to register the boundaries of their property.

Because the parties stipulated to the existence of an easement and the record supports only a prescriptive easement, the district court erred in denying the Kraemers' prescriptive-easement claim. In addition, because the relocation provision is contrary to the historical use of the easement, the district court abused its discretion by imposing that provision on the easement. Finally, with the resolution of this appeal, the Kraemers' cross-application to register boundaries may proceed. Therefore, we reverse and remand.

## FACTS

Respondent Susan L.C. Mahoney brought this action to register her property and establish boundary lines as a result of boundary disputes with her adjacent neighbors to the south, the Harrods,[1] and her adjacent neighbors to the north, appellants Michael Kraemer and Candice Kraemer. The area at issue on this appeal is the Kraemers' driveway, which encroaches on Mahoney's property.

In 1907, the Lakewood Park Third Division plat was recorded, encompassing, among other lots, Lots 17, 18, 19, and 20, which are the subject of this appeal. The Kraemers own Lots 17 and 18, and their home sits on those two lots. Mahoney owns Lot

---

[1] The district court resolved the boundary dispute between Mahoney and the Harrods, and that matter is not on appeal.

2

19 and part of Lot 20, and her home is on that property. The Kraemers' driveway straddles the boundary of the two properties—specifically, the boundary separating Lots 18 and 19.

The Kraemers' property was previously owned by James LaCasse. LaCasse purchased Lot 17 in 1959 and Lot 18 in 1965. In 1965, LaCasse overlaid an existing driveway with bituminous. The driveway as installed lay in part on Lot 18 and encroached on Lot 19. The encroachment on Lot 19 has continued since at least 1965, and LaCasse knew that the driveway encroached onto Lot 19. LaCasse owned Lots 17 and 18 until the Kraemers purchased them in 2012. Since buying the property in 2012, the Kraemers have continued to regularly use and maintain the driveway. When the Kraemers bought their property, they were aware their driveway encroached onto Lot 19.

At the time LaCasse purchased Lot 18 and overlaid the driveway, Lot 19 was not owned by Mahoney. Before 1966, the Kellgrens owned Lot 19. On May 3, 1982, the Kellgrens conveyed Lot 19 to the Aasens. The Byron Reed Company purchased the lot in 1985 and sold it to Mahoney and her husband on July 16, 1985. Mahoney and her husband knew of the encroachment onto their property since at least 1988. Mahoney became the sole owner of the property in 2009.

Mahoney initiated this action to register her boundary lines in January of 2013. The Kraemers initiated a cross-application to register their boundary lines and to establish a permanent easement on that part of Mahoney's property on which their driveway encroaches. Mahoney and the Kraemers stipulated to the existence of an easement for the driveway, and the only disagreement was as to the nature of the easement. At the bench

trial, the only parties to testify with respect to the boundary dispute were Mahoney, Michael Kraemer, and Rita LaCasse, the daughter of James LaCasse.

Mahoney testified that her understanding of the easement was that an agreement existed between James LaCasse and the Kellgrens permitting the driveway to be paved in 1965. Mahoney further testified that, when she and her husband bought Lot 19, they did not ask LaCasse to move the driveway because of his advanced age and because they knew he wanted to keep his property unchanged. Mahoney testified that she remembered having conversations with James LaCasse about the encroachment. Mahoney acknowledged that there was no documentation establishing that an agreement for the easement existed between Mahoney and the Kraemers or between their predecessors in interest.

Rita LaCasse testified that her parents routinely and regularly maintained the driveway from 1965 to 2011 and that she remembers the driveway being in the position it is now since her parents bought the house on Lot 18. Rita also testified that her family considered the boundary divide between the Kraemers' and Mahoney's properties to be in dispute but that her father had never mentioned anything to her about an agreement or the encroachment of the driveway.

Michael Kraemer testified that, since the Kraemers purchased the property, they have been using the driveway in the same manner it had been historically used by the LaCasses. Kraemer also testified that he would like to continue using the driveway in the same manner and would like the ability to modify it, if necessary. Kraemer further testified that, even if he remodeled the home or did some new construction, he intended to keep the driveway in the same position and use in the same way.

4

On November 20, 2015, the district court issued its findings of fact, conclusions of law, and an order. The court granted the Kraemers a nonexclusive easement, but did not explicitly conclude whether the easement was prescriptive or otherwise. The court concluded that it "has insufficient information to draw a conclusion about the understanding of [the LaCasses] about the encroachment of their driveway on the Mahoney property." The district court found that the driveway encroachment has existed since at least 1965. The district court also found that Mahoney knew about the encroachment but never "expected Mr. LaCasse to move the driveway because it was late in his life and he was not changing, remodeling, or rebuilding the home." The district court concluded that the Kraemers are entitled to an easement, but the court added the provision that, if the Kraemers or their successors undertake substantial reconstruction of the driveway (defined as removal or replacement of the driveway), they must relocate the driveway at their own expense to eliminate the encroachment of the driveway on the Mahoney property.

The Kraemers filed a motion with the district court, asking to allow the filing of their cross-application to register their boundaries with the district court[2] and asking the court to amend its findings of fact and conclusions of law to provide a permanent easement without restrictions or to grant a new trial. In its order, the district court concluded that good cause existed to allow the Kraemers to file their cross-application for registration of their boundary lines and granted that request. The district court denied the Kraemers' motion for amended findings of fact and conclusions of law and denied their motion for a

[2] Although the Kraemers had initiated the cross-application process earlier, they had failed to properly file their cross-application with the court.

new trial. The district court explained that in its earlier order it had "declined to hold that a prescriptive easement existed that would disallow any restrictions to be placed on the easement" and concluded that the prescriptive-easement claim failed. For reasons unrelated to this dispute, the district court issued amended findings of fact, conclusions of law, and order on April 8, 2016, and did not change any of the portions addressing the Kraemers' easement.

The Kraemers appeal.

## D E C I S I O N

**I.      The district court erred in determining that the Kraemers did not establish the existence of a prescriptive easement.**

The Kraemers argue that the district court erred by concluding that the easement was not prescriptive in nature and by using its equitable powers to create a relocation provision to the easement. The parties stipulated to the fact that an easement exists. What they disagree about is the nature of the easement. The Kraemers contend that because the encroachment is hostile, the easement is prescriptive. Mahoney claims that it is a permissive easement—in other words, an easement by agreement.

"In boundary-line cases, the findings of the district court will not be disturbed unless the evidence taken as a whole furnishes no substantial support for them or where it is manifestly or palpably contrary to the findings." *Ebenhoh v. Hodzman*, 642 N.W.2d 104, 108 (Minn. App. 2002) (quotation omitted). Whether the findings of fact support the district court's conclusions of law and judgment, however, is a question of law, which we review de novo. *Id.* Actions to determine adverse claims to property are equitable in

6

nature, and district courts generally have broad discretion when fashioning remedies. *Gabler v. Fedoruk*, 756 N.W.2d 725, 730 (Minn. App. 2008).

"A prescriptive easement is based on prior continuous use and grants a right to use the property of another." *Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn. 1999). The purpose of prescriptive easements is "to encourage the prompt resolution of disputes before evidence is destroyed or relevant events pass out of memory and thereby stabilize long-continued property uses." *Id.* The elements of proof required to establish a prescriptive easement are the same as those necessary to establish adverse possession, "subject to such differences as are necessarily inherent in the application of the rules in such cases." *Id.* at 657 (quotation omitted). A party seeking to establish a prescriptive easement must show that its use of the land "was hostile, actual, open, continuous, and exclusive" for the prescriptive 15-year period. *McCuen v. McCarvel*, 263 N.W.2d 64, 65 (Minn. 1978). As in adverse-possession cases, each element must be proved by clear and convincing evidence. *Rogers*, 603 N.W.2d at 657. When a person claiming prescriptive easement "proves actual, open, continuous, and exclusive use, then hostility of the use is presumed." *Boldt v. Roth*, 618 N.W.2d 393, 396 (Minn. 2000). Unless the defendant rebuts the presumption of hostility, the claimant prevails. *Block v. Sexton*, 577 N.W.2d 521, 525 (Minn. App. 1998). Once it comes into existence, a prescriptive easement passes to the subsequent owners of the property. *Id.* at 524.

Here, both parties concede that an easement exists and that the only element in dispute is hostility. Not only has Mahoney conceded "actual, open, continuous, and exclusive use," but the evidence in the record clearly demonstrates that the Kraemers

7

presented unrebutted evidence to satisfy these elements. Therefore, the burden shifted to Mahoney to establish that the use was by permission. *Boldt*, 618 N.W.2d at 396 ("The effect of the presumption . . . is that . . . the burden of proof shifts to the owner of the servient estate to prove permission.").

To begin, Mahoney argues that in addition to satisfying the elements cited above, the Kraemers have the additional burden of demonstrating acquiescence by the servient estate (the Mahoney estate) in order for the hostility presumption to apply. This argument is simply not consistent with our caselaw. In *Block v. Sexton*, we held that evidence that a farm road was being used "openly, visibly, continuously, and without molestation or objection" for the 15-year period was sufficient for the presumption to apply. 577 N.W.2d at 524. We did not require the claimant to establish acquiescence. Thus, once the claimant of an easement demonstrates that the use was actual, open, continuous, and exclusive, as we have here, then the hostility presumption applies.

The only evidence Mahoney offered to rebut this presumption was her testimony that her understanding from talking to James LaCasse was that an agreement existed between the previous owners, LaCasse and the Kellgrens, permitting the paving of the encroaching driveway. The district court sustained the Kraemers' hearsay objection and noted that it was admitting Mahoney's testimony simply for her understanding of an agreement, not for the truth of the matter asserted. However, this was the only evidence offered by Mahoney to rebut the hostility presumption. In finding that the hostility element was rebutted, the district court necessarily used Mahoney's testimony for the truth of the

8

matter asserted. This evidence is inadmissible hearsay that does not fall within any of the hearsay exceptions.

Without this testimony about the prior owners' alleged agreement, the record is devoid of any facts to support a finding that the use of the driveway was permissive. All of the evidence, taken as a whole, establishes that the driveway was being used by LaCasse in a manner adverse to Mahoney and her predecessors' interest. Mahoney testified that she knew about the encroachment when she and her husband moved in. Additionally, even after Mahoney purchased her property in 1985, the findings demonstrate that LaCasse continued to use the driveway exclusively as ingress and egress to his property all the way up until 2011. The findings further demonstrate that the Kraemers have continued to use the driveway in much the same manner. Mahoney did not point to any evidence that she told or clarified with LaCasse that the easement was by permission. Mahoney did not rebut the hostility presumption, and the presumption controls as a matter of law. At a minimum, LaCasse's use of the driveway was hostile, actual, open, continuous, and exclusive since 1985, when the Mahoneys moved in well aware of the encroachment. *See Alstad v. Boyer*, 228 Minn. 307, 312, 37 N.W.2d 372, 376 (1949).

Because the record does not support a finding of an easement by agreement and supports only a conclusion that use of the easement has been hostile, actual, open, continuous, and exclusive for at least a 15-year period, the district court erred as a matter of law in concluding that the Kraemers did not establish the existence a prescriptive easement for the encroaching driveway.

9

**II. It was an abuse of discretion to limit the scope of the Kraemers' easement by including a relocation provision.**

The Kraemers challenge the district court's decision to limit the scope of their easement by imposing a relocation provision. "The scope of a prescriptive easement is measured by the use made of the land giving rise to the easement." *Block*, 577 N.W.2d at 525-26 (quotation omitted). Furthermore, "[i]t has long been held that the holder of an easement is not limited to the particular method of use in vogue when the easement was acquired, and that other methods of use in the aid of the *general purpose* for which the easement was acquired are permissible." *Wash. Wildlife Preservation, Inc. v. State*, 329 N.W.2d 543, 546 (Minn. 1983).

Here, the relocation provision prescribed by the district court terminates the easement if the Kraemers or their successors perform any reconstruction that is not merely seal coating the driveway or covering cracks or potholes on it. The district court explained that it was within its discretion to impose such a provision since this was an equitable claim and the district court has broad discretion when fashioning such remedies. But a district court's discretion must be bounded by the jurisprudence of prescriptive easements, which defines the scope of a prescriptive easement by the use made of the land. *See Gabler*, 756 N.W.2d at 730 (quoting *Romans v. Nadler*, 217 Minn. 174, 174, 14 N.W.2d 482, 483 (1944)).

The use of the Kraemers' driveway has been in a manner with no such restriction. Rita LaCasse testified that, throughout the 1970s all the way up to 2011, her father, with her assistance and the assistance of others, regularly maintained the driveway. There is no evidence in the record to support a finding that the LaCasses' use of the driveway was

10

limited or that the scope of the prescriptive easement should be narrowed in any way. *See Block*, 577 N.W.2d at 526 (holding that the district court acted within its discretion by limiting the width of an easement on the basis of character and historical use of it).

In its order denying the Kraemers' motion for amended findings or a new trial, the district court recognized that a prescriptive easement would "disallow any restrictions to be placed on the easement." Because the district court clearly erred in finding that the Kraemers are not entitled to a prescriptive easement, and because the restriction imposed by the district court substantially altered the easement, we conclude that the district court abused its discretion in imposing the relocation provision.

### III. The district court should address the Kraemers' cross-application to register boundaries on remand.

The Kraemers argue that the district court erred by not registering the boundaries of their property in its order. More specifically, the Kraemers argue that the district court failed to enter the appropriate findings and conclusions of law in its order, which would allow them to register the boundaries of their property.

A review of the record indicates that Mahoney's application to register boundaries, which requires an order from the district court determining the boundary lines, is still pending. The district court stayed Mahoney's boundary determination until the resolution of this appeal. The record also reflects that, while the district court issued an order allowing for the filing of the Kraemers' cross-application, the Kraemers have not yet filed their cross-application to register their boundaries. We remand for further proceedings on the registration of the parties' boundaries.

**Reversed and remanded.**

11