**In re the Marriage of Loydene J. MAY, petitioner, Appellant,**

v.

**Richard John MAY (deceased), by Kathryn J. MAY, Surviving Spouse of Richard John May, Respondent.**

**No. A05–1157.**

Court of Appeals of Minnesota.

May 16, 2006.

Andrew D. Hultgren, Neils, Franz & Chirhart, P.A., St. Cloud, MN, for appellant.

Michael F. Williams, Princeton, MN, for respondent.

Considered and decided by DIETZEN, Presiding Judge; WRIGHT, Judge; and WORKE, Judge.

## OPINION

WRIGHT, Judge.

During the marriage of Richard and Loydene May, Loydene May accrued retirement benefits. Although her retirement benefits did not include a 401(k) account, the stipulated judgment dissolving the marriage awarded Richard May half of Loydene May's "401k," pursuant to a qualified domestic relations order (QDRO). Shortly after the dissolution, Richard May remarried. Less than a year after the dissolution, when Richard May died, a QDRO had not been drafted. His surviving spouse, Kathryn May, was appointed personal representative of Richard May's estate and asserted an interest in Loydene May's retirement benefits on behalf of the estate. When Loydene May opposed this assertion, Kathryn May, as personal representative, was substituted for Richard May in the dissolution proceeding. After a hearing before the district court judge who had presided over the dissolution proceedings, the district court (1) identified the pension in which the parties had intended Richard May to receive an interest in the dissolution judgment and (2) ordered Loydene May to cooperate in drafting a QDRO that would award Kathryn May, personally, the interest that was to have been awarded to Richard May. We affirm in part, reverse in part, and remand.

## FACTS

Richard and Loydene May married in 1978 and had four sons. During the marriage, both Richard and Loydene May worked; and Loydene May accrued retirement benefits from her employment with the United States Postal Service. Richard and Loydene May separated in October 2000, and the February 2003 stipulated judgment dissolving the marriage awarded Richard May "one-half of the value of [Loydene May's] 401k pursuant to a [QDRO]." The retirement benefits that Loydene May accrued as a postal worker, however, did not include a 401(k) account.

In March 2003, Loydene May's attorney sent a proposed QDRO to the administrator of the retirement plan and sent a copy to Richard May's attorney. In April, the plan administrator rejected the proposed QDRO and referred Loydene May's attorney to reference materials that might help in drafting an acceptable QDRO. In May, Loydene May's attorney sent Richard May's attorney a copy of the plan administrator's April letter rejecting the proposed QDRO and asked Richard May's attorney to draft the QDRO. In June, however, Loydene May's attorney sent a proposed QDRO to the district court, with a copy to Richard May's attorney. Richard May's attorney wrote the district court shortly thereafter, stating that he had been asked by Loydene May's attorney to draft the QDRO and that he was almost finished doing so.

In August 2003, Richard May married Kathryn May. When, in September, a QDRO was not completed, both attorneys agreed that, because it was advisable to have someone with expertise draft the QDRO, they would recommend this course of action to their clients. Richard May agreed to have an expert draft the QDRO. Loydene May did not.

Richard May died intestate in January 2004. Kathryn May was appointed personal representative of Richard May's estate and asserted an interest in Loydene May's retirement benefits. In August 2004, the dissolution court issued a stipulated order that substituted Kathryn May, as personal representative, for Richard May in the dissolution proceeding. The stipulated order also stated that, if Loy-

dene May, as she had threatened, commenced a separate action to reopen the dissolution judgment for fraud on the court by Richard May, the dissolution proceeding and the proceeding to reopen the dissolution judgment would be consolidated.

In December 2004, Kathryn May, as personal representative, moved the district court, in the dissolution proceeding, to amend the dissolution judgment to correctly identify the retirement account in which the dissolution judgment had awarded Richard May an interest and to compel Loydene May to cooperate in drafting "an appropriate [QDRO] with respect to the one-half value of [Loydene May's] appropriate retirement account awarded to [Richard May] pursuant to [the dissolution judgment]." Loydene May opposed this motion, arguing that the dissolution judgment was final and could not be modified to add or substitute a payee of Loydene May's retirement account. Because Richard May had not designated a substitute payee before he died, she argued, the terms of the pension caused his interest to lapse.

At a hearing on the motion, neither party disputed that the dissolution judgment awarded Richard May half of Loydene May's Federal Employees Retirement System (FERS) pension. As a result, the district court identified the retirement account in question as Loydene May's "USPS/FERS Pension Plan" and ordered Loydene May to cooperate in drafting a QDRO that would award to Kathryn May, personally, Richard May's interest in that pension. This appeal followed.

## ISSUES

I. Is the district court's ruling defective because of inadequate findings of fact and legal analysis?

II. Did Richard May's death after entry of the dissolution judgment, but before issuance of the QDRO, preclude issuance of a QDRO?

III. Is the personal representative attempting to alter the property distribution?

## ANALYSIS

### I.

The district court ruled that, "[u]nder the facts and circumstances of this case, [Richard May's] surviving spouse is entitled to the proceeds of the dissolution including the awarded retirement account." Loydene May argues that the district court's findings and analysis are insufficient to support its ruling. The personal representative [1] alleges that this argument is defective because it was not mentioned in the Statement of the Case that Loydene May was required to file under Minn. R. Civ.App. P. 133.03. "[T]he statement of the issues contained in an appellant's statement of the case does not limit the reviewability of issues on appeal. The nature of the appeal and the course of the trial court proceedings determine our scope of review." *Lilly v. City of Minneapolis,* 527 N.W.2d 107, 110 n. 2 (Minn. App.1995), *review denied* (Minn. Mar. 29, 1995). Therefore, Loydene May's failure to identify the issue in her Statement of the Case does not preclude us from addressing that issue. Moreover, on this record and in light of the legal analysis below, the district court's findings and analysis are sufficient to permit appellate review.

### II.

The personal representative requested that the payments Richard May

1. To avoid confusion as to the relevant legal status of Kathryn May for purposes of our analysis, we hereinafter refer to her as the personal representative of Richard May's estate.

would have received from Loydene May's pension be made to Richard May's estate. The district court, apparently based on the assumption that the personal representative, as Richard May's surviving spouse, was the primary beneficiary of Richard May's estate, awarded those payments to Richard May's surviving spouse, personally. The personal representative admits that she did not seek this relief. She notes that her motion sought a transfer of the interest in the retirement benefits to the estate and candidly states that awarding the pension interests to Kathryn May, personally, "may have exceeded [the personal representative's] request for relief in her motion." We appreciate her candor on this point. Because the beneficiary of this aspect of Richard May's estate is a matter to be determined in the probate proceedings, we reverse the district court's award of the pension benefits at issue here to Richard May's surviving spouse, personally.

■ We next consider whether a QDRO may issue after Richard May's death to distribute his marital interest in Loydene May's pension pursuant to the dissolution judgment. The Employee Retirement Income Security Act (ERISA) addresses, among other things, the administration and disposition of pensions and pension benefits. See Boggs v. Boggs, 520 U.S. 833, 845–47, 117 S.Ct. 1754, 1762–63, 138 L.Ed.2d 45 (1997) (describing ERISA's design and purposes). ERISA's provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a) (2000). Under ERISA, pension benefits "may not be assigned or alienated." 29 U.S.C. § 1056(d)(1) (2000). This prohibition on assignment and alienation of pension benefits applies "to the creation, assignment, or recognition of a right to any benefit payable with respect to ... a domestic relations order, except that [the prohibition]

shall not apply if the order is determined to be a [QDRO]." 29 U.S.C. § 1056(d)(3)(A) (2000). A "domestic relations order" includes "any judgment" that "relates to the provision of ... marital property rights to a ... former spouse ... and ... is made pursuant to a State domestic relations law[.]" 29 U.S.C. § 1056(d)(3)(B)(ii) (2000). Here, the dissolution judgment relates to providing a former spouse (Richard May) marital property rights in Loydene May's pension annuity. See 5 C.F.R. § 838.103 (2006) (defining "former spouse" for the purpose of "a court order affecting an employee annuity" as "a living person whose marriage to an employee has been subject to a divorce ... resulting in a court order"). Although the dissolution judgment was entered under Minnesota law, it misidentified the benefits in which it was granting Richard May an interest. As such, the dissolution judgment was a domestic relations order, but it was not a QDRO. See 29 U.S.C. § 1056(d)(3)(B)(i)(II), (C)(iv) (2000) (requiring QDRO to "clearly specif[y]," among other things, "each plan to which [the QDRO] applies").

Under 5 C.F.R. § 838.233(e) (2006), the share of a pension annuity attributable to the former spouse of a pension-plan participant stops accruing as of "the date on which the former spouse dies[,]" except as allowed by 5 C.F.R. § 838.237 (2006). See 5 C.F.R. § 838.237(a) (stating that absent an order to the contrary, a "former spouse's share of an employee annuity terminates on the last day of the month before the death of the former spouse, and the former spouse's share of employee annuity reverts to the retiree"). An exception to the termination-on-death rule exists if an appropriate order directs that, after the death of the former spouse, the former spouse's share of the employee annuity be paid to the estate of the former spouse. 5 C.F.R. § 838.237(b)(3). Citing these pro-

visions, Loydene May argues that, because a QDRO directing payment to Richard May's estate had not issued when Richard May died, Richard May's interest in Loydene May's pension reverted to Loydene May.

Loydene May's argument assumes that a QDRO cannot be entered after a former spouse's death. This assumption is ostensibly consistent with a combination of facts: (a) that a QDRO is a type of domestic relations order; (b) that a domestic relations order is an order that "relates to the provision of ... marital property rights to a ... former spouse;" and (c) that a "former spouse" must be a living person. 29 U.S.C. § 1056(d)(3)(B)(i)(I), (B)(ii)(I) (2000) (QDRO and domestic relations order, respectively); 5 C.F.R. § 838.103 (former spouse). But we reject this assumption and Loydene May's argument based on it for several reasons.

First, Loydene May cites no authority explicitly precluding entry of a QDRO after the death of a former spouse. Second, because 5 C.F.R. § 838.237(b)(3) explicitly allows annuity payments to be made to the estate of a former spouse, the death of a former spouse cannot automatically preclude or terminate those payments by invalidating an otherwise viable domestic relations order and thereby undermine an associated QDRO. A determination that a former spouse's death automatically terminates or precludes those payments would render 5 C.F.R. § 838.237(b)(3) not just superfluous, but also contrary to ERISA. Third, the "alternate payee" to whom a QDRO allows payment of pension benefits is defined as "any spouse, former spouse, child or other dependent of a participant who is *recognized by a domestic relations order* as having a right to receive all, or a portion of, the benefits payable under a

plan with respect to such participant." 29 U.S.C. § 1056(d)(3)(K) (2000) (emphasis added). Here, Richard May was a "former spouse" when the relevant domestic relations order (the dissolution judgment) was entered. Therefore, not only can Richard May's death not automatically preclude pension payments, but also he satisfied the requirements for being the "alternate payee" required for a QDRO. And fourth, although Minnesota courts have not addressed this issue, allowing the grant of a postdeath QDRO is consistent with foreign caselaw. *See Torres v. Torres,* 100 Hawai'i 397, 60 P.3d 798, 825 (2002) (affirming district court's grant of ex-wife's motion made after ex-husband's death to amend dissolution judgment and to qualify amended dissolution judgment as QDRO, resulting in ex-wife receiving survivor benefits under ex-husband's pension instead of ex-husband's widow); *Edwards v. Edwards,* 709 N.E.2d 1055, 1057–60 (Ind.Ct.App.1999) (affirming, when all aspects of parties' dissolution were resolved but wife died before dissolution judgment could be entered, district court's postdeath entry of dissolution judgment and associated QDRO nunc pro tunc to a date before wife died).

Because Richard May's death after the entry of the dissolution judgment, but before the issuance of a QDRO, does not preclude the issuance of a QDRO, we affirm the portion of the district court's order requiring Loydene May to cooperate with the personal representative[2] in drafting a QDRO, and remand for the drafting and implementation of an appropriate order.

### III.

Loydene May also asserts that, in asking to have Richard May's interests in

2. We note that the personal representative's authority to act in this matter is not disputed and emphasize that our decision is specific as to the personal representative, not to Kathryn May, personally.

Loydene May's pension annuity treated as part of Richard May's estate, the personal representative is improperly seeking to change Richard May's election from a "fixed percentage" of Loydene May's pension payments to a lump sum that is equal to the "present cash value" of Richard May's interest in Loydene May's annuity payments. The personal representative rejects this reading of her argument, unequivocally stating that Loydene May is "correct" that the parties agreed that Richard May would receive a fixed percentage of Loydene May's annuity payments, that "[d]iscussion of 'cash value' is misplaced[,]" and that "[t]he [e]state is not asking to be paid cash now." Accordingly, we need not address these concerns further.

## DECISION

Appellant's failure to identify in her Statement of the Case an issue argued in her brief does not preclude us from addressing that issue. We reverse the district court's award of the annuity payments at issue here to respondent, personally. Because a former spouse's death after the entry of the dissolution judgment, but before the issuance of a qualified domestic relations order, does not preclude the entry of a qualified domestic relations order, we affirm the portion of the district court's order requiring appellant to cooperate in the drafting of a qualified domestic relations order and remand for the issuance and implementation of an appropriate order.

**Affirmed in part, reversed in part, and remanded.**