*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0906**

Robert Jensen, et al.,
Respondents,

vs.

Carl Rindelaub, et al.,
Appellants.

**Filed May 6, 2024
Affirmed
Wheelock, Judge**

Washington County District Court
File No. 82-CV-18-3180

Thomas C. Atmore, Thomas R. Haugrud, Martin & Squires, P.A., St. Paul, Minnesota (for respondents)

Thomas H. Boyd, Kyle R. Kroll, Winthrop & Weinstine, P.A., Minneapolis, Minnesota; and

Peter J. Frank, GDO Law, White Bear Lake, Minnesota (for appellants)

Considered and decided by Wheelock, Presiding Judge; Slieter, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**WHEELOCK**, Judge

Appellants challenge the district court's order of judgment following a remand and a new trial on the issue of the scope of their easement over respondents' property, asserting that the district court erred by exceeding the scope of relief when it prohibited use of the

easement for storage, failing to interpret the easement as a whole, and admitting the testimony and exhibit of an expert witness. We affirm.

**FACTS**

This is the second appeal between these parties about the scope of an easement over a lakeshore property located on the northeast side of White Bear Lake for the benefit of a non-lakeshore property across the street. In 2021, this court heard the first appeal and concluded that the easement is comprised of rights to ingress-egress, access to the lakeshore, and maintenance of the "usual dock facilities." *Jensen v. Rindelaub*, No. A20-1084, 2021 WL 1605100, at \*1 (Minn. App. Apr. 26, 2021) (*Jensen I*). The easement extends approximately 500 feet across the lakeshore property from the street to the shore of White Bear Lake, and it has had a lengthy history of conflict, which we detail below.[1]

*Creation of the Easement and Early Disputes*

In the early twentieth century, the Hermstead Company owned all of the land that became the lakeshore and non-lakeshore properties in this case. In 1941, Elizabeth Wann and her husband (the Wanns) purchased a parcel of land (the non-lakeshore property) from the company. Elizabeth was the daughter of Worrell Clarkson, owner of the Hermstead Company. In the deed conveying the non-lakeshore property to the Wanns, the company granted them an easement over a parcel of land that was on the shore of White Bear Lake (the lakeshore property).

---

[1] Given the length of the record and the litigious nature of the parties, it is prudent to set forth a detailed history of the easement and the proceedings concerning its use.

2

The first deed included the easement in the legal description of the Wanns'

non-lakeshore property and was dated August 9, 1941. After a few months, the Wanns

deeded only the easement back to the company for unknown reasons, and days after that,

Clarkson reconveyed the easement in a quitclaim deed dated October 21, 1941. *Jensen I*,

2021 WL 1605100, at *1. The quitclaim deed granted

> [a] perpetual easement for ingress and egress across a strip of
> land 15 ft. wide[.] . . . This easement shall also include the
> right to maintain the usual dock facilities on said fifteen foot
> strip on the shore of White Bear Lake.

In 1957, the Wanns' daughter Elizabeth Wann Binger and her husband (the Bingers) took

title to the non-lakeshore property. Sometime before this, William and Lillian Kahlert (the

Kahlerts) purchased the lakeshore property.[2]

The title records for both properties demonstrate ongoing disagreements about the

easement,[3] and at the 2019 bench trial in this matter, the Bingers' son Bruce Binger testified

that the relationship between his father and William Kahlert was "contentious." Bruce

testified that his father told his children that they needed to use the easement at least once

per year to access the lake because this would show evidence of use. Bruce testified that

---

[2] Also in 1957, the Kahlerts obtained an order and decree of registration for their property from the district court that listed the easement as an encumbrance on the land.

[3] One such dispute occurred in 1966, when the Kahlerts and Bingers brought cross-suits against one another. The Kahlerts asserted that the Bingers had abandoned the easement, and the Bingers asserted that the Kahlerts had obstructed the easement to prevent the Bingers from accessing it. The memorial of actions that accompanied the Kahlerts' Certificate of Title No. 13075 describes that the Bingers sought relief to stop the Kahlerts' obstruction and interference with the Bingers' use of the easement, among other things. The parties settled the dispute outside of court in 1969, but there is no information in the record for this case about the terms.

his father told him that the Kahlerts were trying to prevent the Bingers from using the easement. The easement was recorded again with the county on August 6, 1969.

In 1978, the Kahlerts sold their property to respondents Robert and Jane Jensen. The property that the Kahlerts transferred to the Jensens included half of the width of the easement, or about seven and one-half feet. However, the Jensens purchased another 17.5-foot width of property from the Kahlerts, which included the entirety of the easement plus an additional ten feet of shoreline north of the easement. The Jensens built a home and driveway close to the easement and, in that process, removed a pond that had been in the middle of the easement. As it exists now, roughly two-thirds of the easement is wetland area protected under federal and state law.

In 2014, appellants Carl and Darcy Rindelaub purchased the non-lakeshore property that the Bingers had owned.[4] Since then, the Jensens and the Rindelaubs have had numerous disagreements about the easement. In 2018, the Rindelaubs installed a metal boardwalk on the easement that began roughly eight feet from the street, extended approximately 300 feet toward the shoreline, stretched five feet wide, and rose (in some places) three feet above the ground. The Rindelaubs removed the boardwalk only after the city ordered them to do so because the boardwalk failed to conform with various ordinances. During that summer, the Jensens witnessed the Rindelaubs driving ATVs and cutting down trees on the easement.

---

[4] After Elizabeth Wann Binger died, her husband transferred the property into trust, and the trust sold the property to the Rindelaubs. The instrument that conveyed the property neglected to include terms of the easement, and the trust remedied this in 2019.

*Jensen v. Rindelaub I*

In August 2018, the Jensens filed a petition in proceedings subsequent to initial registration of land[5] requesting that the district court issue a temporary, preliminary, or permanent injunction and declaratory judgment that would (1) prohibit a boardwalk or other improvements on the easement, (2) prohibit the use of motor vehicles on the easement, and (3) declare that the easement was in gross rather than appurtenant.[6]

Prior to trial, the district court heard motions in limine from the parties, including a challenge by the Rindelaubs to one of the Jensens' expert witnesses—soil scientist Paul Brandt. The district court granted the Rindelaubs' motion to exclude testimony about the use of the easement prior to the Rindelaubs' purchase of their property and about whether the easement was in gross or appurtenant. *Jensen I*, 2021 WL 1605100, at *2. The court also excluded Brandt's testimony as untimely and outside the scope of the issues presented.[7]

---

[5] In July 2018, the Jensens filed a petition for the same injunctive and declaratory relief, and the district court granted the temporary restraining order, but vacated the order the next month and directed the Jensens to file a petition in proceedings for registration of land. The August 15, 2018 petition is the Jensens' filing in response to the district court's direction.

[6] "An easement in gross is the right to use another's property that is personal . . . [and] is essentially an irrevocable license." *Block v. Sexton*, 577 N.W.2d 521, 525 (Minn. App. 1998) (citations omitted). "An easement appurtenant . . . is granted for the benefit of the grantee's land." *Id.*

[7] In their motion in limine, the Rindelaubs argued that Brandt's testimony should be excluded because he did not complete his second expert report until 17 days before trial. The Jensens argued the importance of Brandt's second report, which addressed an issue not included in his original report, explaining that the second report was late because the Rice Creek Watershed District had recently issued a determination that affected the report.

In December 2019, trial began. In addition to their initial requests for relief, the Jensens argued that the Rindelaubs' boat lift exceeded the "usual dock facilities" permitted by the easement. But because the Jensens had not included it in their complaint, the district court declined to address this issue. The Rindelaubs argued that the district court should expressly find that the easement could be improved and that motor vehicles could be used on it, but the district court declined that request, stating, "[J]ust as the Rindelaubs complain that the Jensens seek limitations on the Easement's scope that do not exist within the text of the Easement, the Rindelaubs likewise seek unenumerated expansions to its scope."

In April 2020, the district court issued its order denying the Jensens relief on all issues. The district court determined that the easement was appurtenant, relying on the deed's language describing the easement as "perpetual" and stating that it passes to "heirs and assigns" of the property owner.[8] The district court also determined that the Jensens presented insufficient evidence to prove that the Rindelaubs were prohibited from constructing improvements on the easement and that the easement is limited to pedestrian traffic. *Id.*

The Jensens moved for a new trial or amended findings, arguing, among other things, that the district court erred when it excluded expert testimony regarding the nature

---

[8] Additionally, the district court determined that the Jensens were barred by res judicata and collateral estoppel from arguing that the easement was in gross because of the previous litigation between the Kahlerts and Bingers on this issue. *See id.*

of the easement and when it excluded evidence of the easement's historic use.[9]  After

holding a hearing on the motion, the district court denied it.

The Jensens appealed, and in April 2021, we issued a decision that reversed in part

and remanded the case to the district court for a new trial.  *Id.* at *10.  We affirmed the

district court's determination that the easement was appurtenant and its decision to exclude

expert testimony about the language used in the easement.  *Id.* at *5.  However, we

determined that the district court abused its discretion when it excluded testimony

regarding the historic use of the easement because the language of the easement is

ambiguous and silent as to improvements and motor vehicles.  *Id.* at *7-8.  We concluded

that extrinsic evidence should be admitted to determine the intent of the original grantor

and grantee of the easement and remanded the case "for the district court to conduct a new

trial limited to determining the scope of the appurtenant easement."  *Id.* at *10.

*Jensen v. Rindelaub II*

In February 2022, the Jensens requested the district court's permission to amend

their pleading, reopen discovery, and use expert witnesses.  In addition to complaints about

the boardwalk, removal of trees, and use of motor vehicles, the Jensens opposed the

---

[9] The Jensens also alleged that the Rindelaubs (1) "represented to the City of Dellwood that they had . . . the right to do whatever they wanted on the Easement, including constructing a boardwalk and improvements," (2) had cut down roughly 12 trees, "some of which were not within the Easement," and (3) acted as though the district court's order meant that "all issues as to motorized vehicles and improvements had been decided in the Rindelaubs' favor."  The district court declined to issue a separate opinion to address the Rindelaubs' alleged behavior; however, it stated that "[t]he Court's trial order clearly did not grant the Rindelaubs a license to treat the easement as though it contained no prohibitions on constructing improvements or other activity beyond pedestrian traffic."

Rindelaubs' storage of property on the easement, the installation and presence of the boat lift, and storage of jet skis on the shoreline. The Jensens argued that our opinion in *Jensen I* did not limit the trial on remand to one issue, and therefore, the district court should address all issues relevant to the "scope of the appurtenant easement," including the meaning of "maintenance of the usual dock facilities." The Rindelaubs objected. The district court denied the Jensens' motion, reasoning that the Jensens had plenty of time to amend their pleadings prior to the 2019 trial, the matter "has been heavily litigated" since that time, and the *Jensen I* opinion did not permit expanding the trial to issues beyond the original petition.

The Rindelaubs moved to exclude the testimony of Brandt, the Jensens' soil-science expert, arguing that his testimony was outside the scope of the trial on remand because the district court excluded it in the 2019 trial and it was not relevant to the historic use of the easement. The Jensens asserted that Brandt's testimony would address the nature and condition of the easement over time and was therefore relevant to the easement's historic use and directly within the scope of the remand.

Both parties submitted a trial memorandum the week before the trial on remand. The Rindelaubs' memorandum addressed the "usual dock facilities" in the context of explaining the easement's purpose and intent and requested that the district court provide clear guidance and instruction to the parties regarding the easement. The Jensens' memorandum proposed analyzing the easement as "two grants"—one for the right of ingress and egress over the Jensens' property and one for the right to maintain "usual dock facilities" on the shoreline.

8

In November 2022, trial began with argument about the trial memoranda. The Jensens argued that the scope of the trial on remand was limited to the ingress-egress grant and that discussing the grant to maintain "usual dock facilities" exceeded that scope. The Rindelaubs argued that the Jensens' proposal to divide the easement into two grants was impermissible because the easement is one grant of rights and understanding the purpose of the easement required consideration of dock facilities and maintenance, which therefore required that the district court hear testimony on that aspect of the easement. The district court ruled that the Jensens' trial memorandum presented a motion to exclude evidence related to the "usual dock facilities," and it then granted that motion, reasoning that the issue of the "usual dock facilities" was outside the scope of the trial on remand. The district court also agreed that thinking about the easement as two "grants" was useful to its analysis.

Next, the district court heard argument about the parties' motions in limine, including the motion to exclude expert Brandt. The Rindelaubs argued that, because the district court had excluded Brandt's testimony and report during the 2019 trial, his testimony should not be admitted for the 2022 trial on remand. They also argued that admitting Brandt's testimony would prejudice them because the district court did not reopen discovery and they could not obtain their own expert to rebut Brandt's testimony and report. The district court ruled that the grounds for excluding Brandt—timeliness and relevance—no longer applied, and it admitted Brandt's testimony.

The trial took place over the course of two days. Relevant testimony is summarized below.

Jane Jensen testified that, during the time that the Bingers lived on the non-lakeshore property, she never saw the Bingers use, improve, store anything on, use a vehicle on, or cut trees down on the easement, though she saw them trimming brush occasionally and saw ski tracks in the snow across the easement a few times. She testified that the Rindelaubs told her that they planned to drive down to the lake and park vehicles on the lawn by the shore—in front of her home. She also testified that other properties on White Bear Lake had easements similar to the easement here and that all of them permitted only pedestrian traffic.

Robert Jensen testified that when he and Jane purchased the property, he understood the easement to be limited to pedestrian traffic after talking to the Kahlerts about it. When asked about the state of the easement, he testified that the easement is a drainage area, so it gets soft after it rains and may take a full day to dry but that, when "meandering through" the easement, it is possible to get from one end to the other staying entirely dry. He also testified that the Rindelaubs stored their dock sections, jet-ski lift, and other items close to the lakeshore and next to the Jensens' house.

Bruce Binger testified as to the use of the easement during the time that he lived on the non-lakeshore property—on and off from 1952 through 1975. He stated that his father "wasn't a lake person," so the family never made "full use of the easement." He testified that his family never improved the easement, never stored anything on the easement other than a sailboat off the shoreline, which they moored off the easement and accessed by wading out to it, and never drove on the easement. He testified that he understood the purpose of the easement was to provide access to the lake. Because his father did not have

10

an interest in making greater use of the lake, Bruce testified that they rarely used the easement but walked on it at least once per year to provide evidence that they had not abandoned it. During his testimony, Bruce described the easement, stating that it was "swampy. It was reeds and cattails and it ran the whole length, or majority of the length, of the easement" from the road to the lake. Bruce testified that he understood William Kahlert had made it "swampy" as part of his attempts to terminate the easement.

Brandt testified in his capacity as a licensed soil scientist hired to "investigate the bearing pressure of the soils" of the easement. He testified that the easement likely did have a meandering path across the width that could support foot traffic along the length of the easement. However, he testified that the wetland area of the easement could not support foot traffic without damaging the roots of the plants there and that driving on the easement would continue to cause erosion and sediment discharge into White Bear Lake. Brandt also testified that the boardwalk's installation and subsequent removal, though he did not see it, made walking on the easement harder after it rained. He testified that the installation and removal of the boardwalk "destroyed the root structure and the vegetation that was holding the soil from being discharged into White Bear Lake," which caused more erosion and more discharge into White Bear Lake. Furthermore, the boardwalk had prevented the vegetation from growing, exacerbating the problem.

Carl Rindelaub testified that when he first saw the easement, "[i]t was completely overgrown with buckthorn and, like, impassable. Like, you couldn't walk through it without, you know, getting really scratched up from buckthorn and different vines and vegetation, basically." He testified that his family wears knee-high boots to use the

11

easement because it is so muddy and that, after heavy rains, there can be two to three feet of water in some parts of the easement. Carl testified that he tried to "clean up" the easement by removing buckthorn and debris that had fallen and hired contractors to clear out the drainpipe to allow water on the easement to drain into the lake but that the easement still floods. Carl testified that, because the easement is not safe to walk on, his family cannot bring people to the lake through the easement.

The district court issued its order and judgment in March 2023. The district court described the easement as consisting of two grants: "(1) the right to a perpetual easement for ingress and egress purposes and (2) the right to maintain the usual dock facilities." The district court declined to address any arguments related to the second grant, but it opined:

> Although the scope of the second grant is not before the court, that right is contained within the easement, and the first grant must allow for the rights granted under the second grant to be exercised. The rights exercised under the second grant must be consistent with the easement purposes and with the permitted uses and restrictions in the first grant. Specifically, the second grant is solely to maintain the usual dock facilities, and the exercise of those rights must be consistent with pedestrian use of the easement. There shall be no motorized vehicle use, no construction of a boardwalk or other improvements, and no exercise of rights relating to dock maintenance in a manner that is inconsistent with the first grant.

The district court also determined that (1) the "Ingress-Egress Easement is limited to pedestrian use only for ingress and egress purposes only, and all other uses and purposes including but not limited to storage are prohibited"; (2) "[v]ehicles of all types . . . are prohibited on and from using the Ingress-Egress Easement"; and (3) the easement must "remain in its natural state, and no improvements, including but not limited to a boardwalk,

12

shall be made to or constructed on the Ingress-Egress Easement." The order provided that the Rindelaubs had the right "to trim and remove vegetation, brush and trees on the Ingress-Egress Easement to the extent necessary for the reasonable use thereof for pedestrian ingress and egress only." The Rindelaubs moved for a new trial or amended findings, and the district court denied that motion in May 2023.

The Rindelaubs appeal.

## DECISION

On appeal, the Rindelaubs challenge the district court's denial of their motion for a new trial, contending that the district court erred as a matter of law by (1) granting relief outside the scope of the Jensens' initial prayer for relief when the district court announced that the easement could not be used for storage, (2) not interpreting the easement as a whole, and (3) allowing the Jensens' expert witness to testify at trial. We address each argument in turn.

We review a district court's decision to deny a request for a new trial for an abuse of discretion. *Christie v. Est. of Christie*, 911 N.W.2d 833, 838 (Minn. 2018). We review a district court's application of the law de novo. *Harlow v. State, Dep't of Hum. Servs.*, 883 N.W.2d 561, 568 (Minn. 2016). And we review a district court's findings of fact for clear error, meaning that "if there is reasonable evidence in the record to support the court's findings," then the district court did not err. *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) (quotation omitted).

13

**I.** **The district court did not err by addressing whether the easement included storage because the parties addressed the issue of storage rights on the easement and requested clarification as to the scope of those rights.**

The Rindelaubs argue that the district court erred by prohibiting storage on the ingress-egress easement because (1) it imposed broader restrictions than the Jensens requested in their initial prayer for relief and (2) denying the Jensens' motion to amend their complaint limited the forms of relief to those requested in the Jensens' initial complaint.

The Jensens contend that the district court did not err because (1) the Rindelaubs requested a broad ruling from the district court to determine their rights as applied to the easement; (2) throughout the litigation and without objection from the Rindelaubs, the Jensens raised the Rindelaubs' misuse of the easement to store items; and (3) the district court has broad discretion to determine the scope of relief it will afford.

In the district court proceedings, the issue of storage arose, not in the initial complaint, but at the 2019 trial, when the Jensens' attorney questioned Robert Jensen about the presence of a "boat lift, dock, or jet ski lift" within the easement area. The Rindelaubs objected to the question, but only insofar as it focused on the easement's width: "We're not here on a petition whether they were violating the terms of the 15 feet. So I'm just going to object on relevance." The questioning then turned to the Rindelaubs' use of the easement to store their personal property, and the parties each insisted that the district court determine the rights of the easement, including storage.

The Jensens requested to amend their complaint on remand so that the district court would address the issue of storage. The district court denied this motion, reasoning that

the time to amend the complaint had passed. Nevertheless, at the 2022 trial, the Jensens' attorney asked Bruce Binger whether his family ever stored anything on the easement and the Rindelaubs' attorney did not object to this question. Moreover, in the Rindelaubs' trial memorandum, they requested that the district court "issue a final order in this matter which clearly and finally decides the scope of the easement as applied to improvements and motor vehicles in a way that provides certainty and finality to the parties."

A district court is not limited to granting only the specific equitable relief requested in the parties' pleadings. *See Hoffman Motor Truck Co. v. Erickson*, 144 N.W. 952, 953 (Minn. 1914) (stating that "the relief granted is in no wise limited or controlled by the prayer" and that "in equity the kinds and forms of specific remedies are as unlimited as the powers of such courts to shape relief awarded in accordance with the circumstances of the particular case"). In fact, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Minn. R. Civ. P. 15.02; *see La Rue Iron Mining Co. v. Vill. of Nashwauk*, 222 N.W 527, 528 (Minn. 1928) ("[T]he prevailing party gets redress frequently without regard to the specific relief demanded, and the judgment, if for relief beyond that expressly demanded, is not void so long as the subject-matter adjudicated was embraced within the pleadings or litigated by consent."). "Consent is commonly implied either where the party fails to object to evidence outside the issues raised by the pleadings or where he puts in his own evidence relating to such issues." *Roberge v. Cambridge Coop. Creamery Co.*, 67 N.W.2d 400, 403 (Minn. 1954); *see Hopper v. Rech*, 375 N.W.2d 538, 543 (Minn. App. 1985) (holding that the district court did not err when it decided an issue,

15

in part because both parties introduced evidence pertaining to that issue without objection), *rev. denied* (Minn. Dec. 30, 1985). Trials and hearings often address issues not included in the pleadings, and when a party fails to object to the issue being raised after the pleadings, then the party against whom the issue was raised is considered to have impliedly consented to litigating it. *Hopper*, 375 N.W.2d at 543.

Here, we determine that the Rindelaubs impliedly consented to litigating the issue of storage on the easement. At the 2019 trial, both parties insisted that the district court determine the rights of the easement, including storage. At the 2022 trial, the Rindelaubs did not object to the Jensens' attorney asking Bruce Binger about whether his family ever stored anything on the easement. Additionally, the Rindelaubs' trial memorandum requested that the district court "issue a final order . . . that provides certainty and finality to the parties." Therefore, the district court did not err when it addressed the issue of storage on the easement.

The Rindelaubs cite only one case to support their argument, *May v. May ex rel. May*. 713 N.W.2d 910, 914 (Minn. App. 2006) (reversing the district court's award of pension benefits to the surviving spouse personally rather than to the decedent's estate because the surviving spouse did not request this specific relief). We conclude that *May* is not a persuasive case on these facts because *May* deals with the assignment of a pension to the surviving spouse rather than to the decedent's estate and the district court erred because it acted independently; the surviving spouse did not request that the benefits be assigned to her personally, but requested they be awarded to the decedent's estate. *Id.* at 913-14. We reversed this point of the district court's order "[b]ecause the beneficiary of this aspect of

16

[the decedent]'s estate is a matter to be determined in the probate proceedings." *Id.* at 914. The district court here did not decide an issue that would be best left to another decision-maker.[10]

Because both parties raised issues of storage without objection and the Rindelaubs requested a clear opinion with finality on the scope of the easement, we conclude that under Minn. R. Civ. P. 15.02 the district court's May 2023 order does not exceed the scope of relief requested. Thus, the district court did not err by prohibiting storage of personal property on the ingress-egress easement.

## II. The district court did not err when it considered the easement as providing two grants because the district court continued to review the easement as a whole.

The Rindelaubs argue that the district court erred when it determined that the easement consisted of two grants, one for ingress and egress and another to maintain the usual dock facilites. The Rindelaubs assert that this was error because the easement is a single instrument and all privileges granted to the property owner by the easement must be considered as a whole to determine the extent of the easement. They rely on *Minneapolis Athletic Club v. Cohler* for the principle that "[t]he sum total of these particular privileges of use makes up the extent of the easement." 177 N.W.2d 786, 789 (Minn. 1970). Furthermore, the Rindelaubs insist that the law requires that they be allowed "to enjoy the use [of the easement] to the fullest extent," *Farnes v. Lane*, 161 N.W.2d 297, 300 (Minn.

---

[10] The Rindelaubs also argued that the district court denied the Jensens' motion to amend their initial complaint to include the issue of storage on the easement, but even though the district court denied the request, it does not change the fact that the issue of storage was tried by implied consent of the parties under Minn. R. Civ. P. 15.02.

17

1968), and that the longstanding rule of easements in Minnesota is that they are "available for the reasonable uses to which the dominant estate may be devoted," *Giles v. Luker*, 9 N.W.2d 716, 718 (Minn. 1943). The Rindelaubs also rely on contract-law principles to argue that the district court should have read the easement rights in the context of the easement as a whole, asserting that because an express easement is considered a contract, the terms of a contract must be read to be in harmony with each other and considered in the context of the contract as a whole. *See Quade v. Secura Ins.*, 814 N.W.2d 703, 705 (Minn. 2012); *Nat'l City Bank v. Engler*, 777 N.W.2d 762, 765 (Minn. App. 2010), *rev. denied* (Minn. Apr. 20, 2010). The Rindelaubs finally argue that because the purpose of the easement is to provide access to the lake, the district court erred when it subordinated the grant of rights for ingress and egress to the grant of rights to maintain the usual dock facilities.

The Jensens assert that the district court did not err because it considered the easement as a whole and correctly interpreted the interplay between the two separate grants that comprise the easement. They argue that the district court properly considered "all the circumstances" of the easement over time and point to several examples in our caselaw in which courts considered the full circumstances of the easement to resolve questions about the scope of the easement at issue. *Farnes*, 161 N.W.2d at 300-01 (providing a list of questions for a court to consider when resolving ambiguity in an easement); *Kretz v. Fireproof Storage Co.*, 149 N.W. 648, 651-52 (Minn. 1914) (discussing the changes in quality and condition of an easement over time); *Block*, 577 N.W.2d at 525-26 (reviewing

the elements necessary to create a prescriptive easement, which includes the use of an easement over time).

On remand, the district court admitted extrinsic evidence because this court had concluded that the language of the 1941 easement is ambiguous as to the original parties' intent regarding the use of vehicles, improvements, or storage. The district court determined the scope of the easement after reviewing extrinsic evidence during the trial on remand. It specifically found that the purpose of the easement "was for the pedestrian access to and from White Bear Lake." Because the purpose of the easement was limited to pedestrian lake access, the district court rejected the Rindelaubs' interpretation of the easement language to allow uses of the easement that exceed that scope, such as the use of motorized vehicles on it. In making this determination, the district court followed our caselaw demonstrating that the purpose and intent of the easement controls the interpretation of its uses today and that the interests of the parties must be balanced. The district court's final conclusion of law stated that the rights of use of each grant must be consistent with the purpose of the easement:

> The easement at issue contains two grants: 1) the right to a perpetual easement for ingress and egress purposes, and 2) the right to maintain the usual dock facilities. Although the scope of the second grant is not before the court, that right is contained within the easement, and the first grant must allow for the rights granted under the second grant to be exercised. The rights exercised under the second grant must be consistent with the easement purposes and with the permitted uses and restrictions in the first grant. Specifically, the second grant is solely to maintain the usual dock facilities, and the exercise of those rights must be consistent with pedestrian use of the easement. There shall be no motorized vehicle use, no construction of a boardwalk or other improvements, and no

19

> exercise of rights relating to dock maintenance in a manner that is inconsistent with the first grant.

We do not discern error in this conclusion. To determine the scope of the easement, the district court had to consider the easement as a whole. In doing so, the district court determined that the easement's language includes two grants: one for ingress and egress and another to maintain the usual dock facilities. And although the district court had denied the Rindelaubs' motion to receive evidence related to the second grant (to maintain the usual dock facilities), it recognized that "[t]he rights exercised under the second grant must be consistent with the easement purposes and with the permitted uses and restrictions in the first grant." We read the district court's order to be consistent with caselaw requiring that the easement must be read as a whole and must be taken in context.

Contrary to the Rindelaubs' arguments, the district court's conclusion states that neither grant within the easement can exceed the other, meaning that the district court's interpretation of the easement is in harmony with the easement's entirety. The district court's interpretation does not limit the easement but is consistent with the purpose of the easement—to provide lake access—just not the type of access for which the Rindelaubs hoped. We are not aware of any caselaw that supports the Rindelaubs' characterization of easement rights to permit any possible use that the benefitted property wants. Rather, the caselaw demonstrates that the interests of the parties must be balanced. Therefore, the district court did not err when it read and explained the easement this way—identifying two grants that comprise the single easement—and analyzed the easement as a whole.

**III. The district court did not abuse its discretion by admitting the testimony of the Jensens' expert witness.**

Finally, the Rindelaubs argue that the district court erred by admitting the testimony of expert witness Brandt for three reasons. First, they argue that the district court's decisions in the 2019 trial are the law of the case because the Jensens did not appeal the decision to exclude Brandt's testimony before the 2019 trial, and therefore, the district court was not allowed to admit Brandt's testimony for the 2022 trial on remand. Second, they argue that Brandt's testimony is irrelevant to the factual dispute on remand because it does not assist in the determination of the intent of the original parties to the easement in 1941, which was the purpose of the extrinsic evidence on remand. Third, they assert that the admission of Brandt's testimony was prejudicial to them because the district court did not reopen discovery and they could not rebut his testimony with a competing expert.

The Jensens contend that admitting Brandt's testimony was within the district court's broad discretion to exclude or permit testimony at trial. They assert that this court's direction to the district court to permit extrinsic evidence on remand to determine the scope of the easement includes evidence of the nature and condition of the easement and that Brandt's testimony is relevant to that aspect of the easement.

Before the 2019 trial, the district court excluded Brandt's testimony as to his second report because it determined that the second report was irrelevant and untimely. Before the 2022 trial, the Rindelaubs moved to exclude Brandt's testimony on the same grounds, but this time, the district court admitted Brandt's testimony as to the second report, determining that timeliness was no longer a concern because three years had passed since

21

the Jensens disclosed the second report in 2019 and that the testimony was now relevant because it "does go to the issue of historical use."

A district court has broad discretion to admit or exclude evidence, and "its ruling will not be disturbed unless it is based on an erroneous view of the law or constitutes an abuse of discretion." *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45-46 (Minn. 1997) (quotation omitted). When a party requests a new trial on the grounds of an improper evidentiary ruling, the party must demonstrate prejudicial error before relief can be granted. *Id.* at 46. When a party uses an expert witness, the party must provide a written report from the witness contemporaneously with the disclosure of the witness absent some exception from the district court. Minn. R. Civ. P. 26.01(b).

It is not disputed that the Jensens did not timely submit Brandt's second report before the 2019 trial, but they did timely disclose him as an expert witness and submit his first report. Thus, by the time of the 2022 trial, the Jensens had timely disclosed him as an expert and provided his reports. Because Brandt was not a new expert but one of those disclosed during discovery prior to the 2019 trial, the Rindelaubs knew who he was and what his planned testimony would be and cannot claim surprise. The district court excluded Brandt's testimony in the 2019 trial on the basis of its being outside the scope of the issues presented, but in *Jensen I*, this court overturned the district court ruling that excluded extrinsic evidence and directed that a new trial take place on remand to hear that evidence. The purpose of the 2022 trial was "to determin[e] the scope of the appurtenant easement," *Jensen I*, 2021 WL 1605100, at *10, and Brandt's testimony falls within this

22

purpose. We therefore conclude that the Rindelaubs were not prejudiced and thus that the district court did not err by exercising its broad discretion to admit Brandt's testimony.

In sum, the issue before the district court on remand was "to determin[e] the scope of the appurtenant easement." *Id.* The district court received extrinsic evidence to examine and determine the scope, intent, and purpose of the easement, and we do not discern any error in the district court's interpretation of the easement, scope of relief issued, or admission of evidence. Because the district court did not err or abuse its discretion, we affirm.

**Affirmed.**